Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/02/2020 08:12 AM CDT

HBI, L.L.C., appellee, v. Walter D.
Barnette, appellant.

___ N.W.2d ___

Filed April 10, 2020.    No. S-19-147.

1. **Constitutional Law: Statutes.** The constitutionality of statutes and
   statutory interpretation present questions of law.
2. **Tax Sale: Time.** Tax sale proceedings are governed by the law in effect
   at the time the tax sale certificate was sold.
3. **Tax Sale: Time: Liens.** Under Neb. Rev. Stat. § 77-1801 (Reissue
   2009), properties with delinquent real estate taxes on or before the
   first Monday of March may be sold at a tax sale. The tax sale pur-
   chaser acquires a lien on the property, which is represented by a tax
   certificate.
4. **Tax Sale.** A property owner may redeem a property after a tax cer-
   tificate has been issued with payment of the amount noted on the tax
   certificate, other taxes subsequently paid, and interest.
5. **Tax Sale: Time: Deeds: Foreclosure.** If, after 3 years of the issuance of
   a tax certificate, a property has not been redeemed, there are two meth-
   ods by which the holder of the tax certificate may acquire a deed to the
   property: the tax deed method and judicial foreclosure.
6. **Tax Sale: Deeds: Notice.** A tax deed acts to convey the property and
   may be issued by the county treasurer after proper notice is provided.
7. **Tax Sale: Foreclosure: Liens.** Judicial foreclosure requires the holder
   of a tax certificate to foreclose on the lien for taxes in the district court
   of the county where the property is located.
8. **Dismissal and Nonsuit.** Under Neb. Rev. Stat. §§ 25-601 and 25-602
   (Reissue 2016), a plaintiff has the right to dismiss an action without
   prejudice any time before final submission of the case, so long as no
   counterclaim or setoff has been filed by an opposing party.
9. **Tax Sale: Deeds: Dismissal and Nonsuit.** The language used to dis-
   tinguish between the two methods of converting a tax certificate into a
   deed in *Neun v. Ewing*, 290 Neb. 963, 863 N.W.2d 187 (2015), did not

abrogate the tax certificate holder's right to voluntary dismissal under Neb. Rev. Stat. §§ 25-601 and 25-602 (Reissue 2012).

10. **Tax Sale: Notice.** If a titled owner cannot be found upon diligent inquiry, Neb. Rev. Stat. § 77-1834 (Reissue 2009) permits the purchaser or his or her assignee to publish the notice in some newspaper published in the county and having a general circulation in the county or, if no newspaper is printed in the county, then in a newspaper published in Nebraska nearest to the county in which the real property is situated.

11. **Tax Sale: Notice: Proof: Words and Phrases.** The word "found" in Neb. Rev. Stat. § 77-1834 (Reissue 2009) means able to be served, and the statute authorizes the holder of a tax certificate to provide notice by publication if the record owner was unable to be served by certified mail at the address where the property tax statement was mailed, upon proof of compliance with Neb. Rev. Stat. § 77-1832 (Reissue 2009), if the owner in fact lived at such address.

12. **Tax Sale: Statutes.** Even the misidentification of the purchaser on an actual tax deed does not render it void. If a tax deed is in compliance with the statutory requirements, the misidentification would, at most, necessitate reformation of the tax deed.

13. **Tax Sale: Deeds.** There is no language in Neb. Rev. Stat. § 77-1831 (Reissue 2009) requiring that the party applying for the tax deed be included.

14. **Constitutional Law: Statutes: Presumptions: Proof.** A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality. The burden of establishing the unconstitutionality of a statute is on the one attacking its validity.

15. **Constitutional Law: Statutes: Proof.** The unconstitutionality of a statute must be clearly established before it will be declared void.

16. **Tax Sale: Notice.** Neb. Rev. Stat. § 77-1832 (Reissue 2009) requires service at the address where the property tax statement is mailed, and thus, it is reasonably calculated to provide notice to the property owner.

17. ____: ____. Notice by publication under Neb. Rev. Stat. § 77-1834 (Reissue 2009) is limited to circumstances where the record owner resides at the address where the property tax statement is mailed, but he or she is unable to be served there.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Edward F. Noethe, of McGinn, Springer & Noethe, P.L.C., for appellant.

Jeffrey J. Blumel and Gretchen L. McGill, of Dvorak Law Group, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## I. INTRODUCTION

This is an appeal from an action to quiet title after issuance of a tax deed. Appellant, Walter D. Barnette, argues that a notice of application for a treasurer's deed was defective and that the statutory scheme relating to notice requirements for obtaining a tax deed is unconstitutional on due process grounds. We affirm.

## II. BACKGROUND

On March 5, 2013, Pontian Land Holdings LLC (Pontian) purchased a certificate of tax sale for real property after Barnette failed to pay real estate taxes on the property. The property was located at "Lot 2, Swaney's Addition Replat I, an Addition to the City of Bellevue, as surveyed, platted and recorded, Sarpy County, Nebraska." After waiting the statutorily required 3 years, Pontian initially filed a judicial foreclosure action on the property, but later dismissed the action and filed an application for a treasurer's tax deed.

As required by Neb. Rev. Stat. § 77-1831 (Reissue 2009), Pontian sent notice of its intent to apply for a treasurer's deed for the property by certified mail, return receipt requested, to the address where the property tax statement was mailed. This address was Barnette's residence, which was located in Pottawattamie County, Iowa. The notice listed Pontian as the purchaser of the real property, but erroneously stated that Guardian Tax Partners Inc. (Guardian) would apply for the treasurer's tax deed. The notice also listed Guardian as the sender of the certified mail. Although Barnette resided at the address where the notice was sent, the notice was returned as "unclaimed." Handwriting on the certified mail receipt

indicates the post office had made three attempts to deliver the notice prior to returning it as unclaimed. Pontian subsequently published notice in a Sarpy County newspaper for 3 consecutive weeks.

On August 29, 2016, the Sarpy County treasurer issued a treasurer's tax deed in Pontian's name. Pontian filed a complaint, seeking to quiet title on the property. Barnette filed a counterclaim to quiet title in his name. Pontian later transferred the property to HBI, L.L.C., and HBI was substituted as plaintiff in the case. On October 31, 2017, Barnette filed a motion for summary judgment that was later withdrawn. On January 30, 2018, HBI filed a motion for summary judgment. On February 14, Barnette filed a second motion for summary judgment. Both motions were denied by the district court as being premature.

On October 12, 2018, HBI filed a second motion for summary judgment. On October 22, Barnette filed a third motion for summary judgment. Barnette later amended his counterclaim with leave from the district court. The counterclaim alleged Pontian's notice was defective and challenged the constitutionality of the notice requirements set forth in Neb. Rev. Stat. §§ 77-1832 to 77-1835 (Reissue 2009) on due process grounds. Specifically, Barnette argued that because Pontian knew Barnette lived in Pottawattamie County, Iowa, notice by publication in Sarpy County violated his right to due process.

On January 15, 2019, the district court granted HBI's amended second motion for summary judgment and denied Barnette's third motion for summary judgment. The district court quieted title in favor of HBI after finding that Barnette was given sufficient notice in compliance with Nebraska law and that the notice did not violate the due process requirements of the U.S. Constitution or the Nebraska Constitution.

Barnette now appeals the district court's order granting summary judgment in favor of HBI and denying Barnette's third motion for summary judgment.

## III. ASSIGNMENTS OF ERROR

Barnette assigns that the district court erred in (1) not finding that Pontian's original election of foreclosure barred the tax deed process, (2) finding the notice provided complied with Nebraska statutes, (3) not finding the Nebraska tax sale statutory scheme violated the U.S. Constitution and the Nebraska Constitution, (4) finding Barnette's due process rights under the U.S. Constitution and the Nebraska Constitution were not violated, and (5) not quieting title to Barnette.

## IV. STANDARD OF REVIEW

[1] The constitutionality of statutes and statutory interpretation present questions of law.[1]

## V. ANALYSIS

### 1. Original Election of Judicial Foreclosure

In his first assignment of error, Barnette argues Pontian's claim for a tax deed was barred by its original election to proceed to judicial foreclosure.

[2-7] The Legislature's recent amendments to tax sale statutes notwithstanding, the proceedings at issue in this case are governed by the law in effect on December 31, 2009.[2] Under Neb. Rev. Stat. § 77-1801 (Reissue 2009), properties with delinquent real estate taxes on or before the first Monday of March may be sold at a tax sale. The tax sale purchaser acquires a lien on the property, which is represented by a tax certificate.[3] A property owner may redeem a property after a tax certificate has been issued with payment of the amount noted on the tax certificate, other taxes subsequently paid, and

---

[1] *Pfizer v. Lancaster Cty. Bd. of Equal.*, 260 Neb. 265, 616 N.W.2d 326 (2000).

[2] See Neb. Rev. Stat. § 77-1837.01(2) (Cum. Supp. 2016).

[3] See Neb. Rev. Stat. § 77-1818 (Reissue 2009).

interest.[4] If, after 3 years, the property has not been redeemed, there are two methods by which the holder of a tax certificate may acquire a deed to the property: the tax deed method and judicial foreclosure.[5] A tax deed acts to convey the property and may be issued by the county treasurer after proper notice is provided.[6] Judicial foreclosure requires the holder of a tax certificate to foreclose on the lien for taxes in the district court of the county where the property is located.[7]

Barnette relies on language in *Neun v. Ewing*[8] to support his argument that Pontian's application for a tax deed was barred by its initial filing of a foreclosure action. In *Neun*, property owners attempted to redeem their property after a foreclosure action had been filed using the procedure set forth in § 77-1824, authorizing redemption from a tax sale prior to the issuance of a tax deed. This court held that once judicial foreclosure has begun, only the separate redemption procedure established by Neb. Rev. Stat. § 77-1917 (Reissue 2009) is available.[9] Recognizing that the two procedures for converting a tax sale certificate into a deed are not interchangeable, the court concluded that

> once the holder has elected to proceed under chapter 77, article 19, the provisions of such article govern the rights of the parties in relation to the tax sale certificate. In other words, after the election to proceed by judicial fore-closure has been made, both the holder and the property owner are bound by that election.[10]

---

[4] See Neb. Rev. Stat. § 77-1824 (Reissue 2009). See, also, *SID No. 424 v. Tristar Mgmt.*, 288 Neb. 425, 850 N.W.2d 745 (2014).

[5] See *SID No. 424, supra* note 4.

[6] See § 77-1831 and Neb. Rev. Stat. § 77-1837 (Reissue 2009).

[7] See Neb. Rev. Stat. § 77-1902 (Reissue 2009).

[8] *Neun v. Ewing*, 290 Neb. 963, 863 N.W.2d 187 (2015).

[9] See *id.*

[10] *Id.* at 970, 863 N.W.2d at 194.

In arriving at its holding, the court articulated: "'Although the overall objective of both procedures is the recovery of unpaid taxes on real property, these [procedures] "are two separate and distinct methods for the handling of delinquent real estate taxes"' which are 'neither comparable nor fungible.'"[11]

[8] Barnette argues that this language precluded Pontian from applying for a tax deed because it initially filed a foreclosure action. *Neun* is distinguishable. The issue in *Neun* was the manner of *redemption* permitted once the holder of a tax sale certificate had elected to proceed with judicial forfeiture. Moreover, Barnette's interpretation of *Neun* is inconsistent with a plaintiff's statutory right to voluntary dismissal. Under Neb. Rev. Stat. §§ 25-601 and 25-602 (Reissue 2016), a plaintiff has the right to dismiss an action without prejudice any time before final submission of the case, so long as no counterclaim or setoff has been filed by an opposing party.

[9] Here, Pontian's foreclosure action was dismissed prior to a summons being issued, and no complaint was served on Barnette in that action. Thus, Pontian had a statutory right to voluntarily dismiss its initial filing without prejudice. We hold that Pontian's election to initially file and dismiss the judicial foreclosure action did not preclude his application for a tax deed. In addition, we clarify that the language used to distinguish between the two methods of converting a tax certificate into a deed in *Neun* did not abrogate the tax certificate holder's right to voluntary dismissal under §§ 25-601 and 25-602. In this case, Pontian had a right to voluntary dismissal under §§ 25-601 and 25-602 because no counterclaim or setoff had been filed.[12]

---

[11] *Id.*

[12] See *id.* See, also, *Adair Asset Mgmt. v. Terry's Legacy*, 293 Neb. 32, 875 N.W.2d 421 (2016) (stating that existence of different procedures available to holder to convert tax sale certificate into deed does not affect meaning of tax sale certificate).

## 2. Notice Under § 77-1831

### (a) Publication in Sarpy County

In his second assignment of error, Barnette first argues that publication in Sarpy County was insufficient notice because Pontian knew Barnette lived in Pottawattamie County, Iowa.

A tax sale purchaser is not entitled to a tax deed unless he or she provides sufficient notice to the property owner at least 3 months prior to the application for the tax deed.[13] A tax deed is presumptive evidence that notice has been served or published as statutorily required.[14]

[10] Although the Legislature has since amended § 77-1832, the version of the statute governing the proceedings at issue here provided, in relevant part, that "[s]ervice of the notice provided by section 77-1831 shall be made by certified mail, return receipt requested, upon the person in whose name the title to the real property appears of record to the address where the property tax statement was mailed . . . ." If the titled owner could not be found upon diligent inquiry, § 77-1834 permitted the purchaser or his or her assignee to publish the notice "in some newspaper published in the county and having a general circulation in the county or, if no newspaper is printed in the county, then in a newspaper published in this state nearest to the county in which the real property is situated."

In *Wisner v. Vandelay Investments*,[15] this court addressed whether the applicable language in §§ 77-1832 and 77-1834 permitted the holder of a tax certificate to serve a property owner by publication after being unable to serve her by certified mail when the holder had actual knowledge of the property owner's location. In that case, the holder had sent notice by certified mail, return receipt requested, but the notice was returned as "'unclaimed.'"[16] This court held that the

---

[13] See § 77-1831.

[14] See Neb. Rev. Stat. § 77-1842 (Reissue 2009).

[15] *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018).

[16] *Id.* at 853, 916 N.W.2d at 721.

holder had completely complied with the notice requirements of § 77-1832 by proceeding to service by publication after the owner was unable to be served by certified mail at the address where the property tax statement was mailed.[17]

[11] We further held that the word "found" in § 77-1834 meant "'able to be served'" and that the statute authorized the holder of a tax certificate to provide notice by publication if the record owner was unable to be served by certified mail at the address where the property tax statement was mailed, upon proof of compliance with § 77-1832, if the owner in fact lived at such address.[18] The court warned that a contrary holding would permit a property owner that was already deficient in paying real estate taxes to force a judicial foreclosure proceeding by avoiding the notice.[19]

Here, Pontian sent notice of its application for a tax deed by certified mail, return receipt requested, to the address where the property tax statement was mailed—Barnette's residence in Pottawattamie County, Iowa. Barnette had continuously resided at this address for 4 years and had received notices of taxes due on the property at this address. However, Pontian's notice was returned as "unclaimed." Pontian then published the notice in Sarpy County as required by § 77-1834. The tax deed was issued after Pontian had complied with both §§ 77-1832 and 77-1834. Section 77-1834 only authorized service by publication in the county where the property was located.[20] Because Pontian was not required to publish notice in any other county except Sarpy County, Pontian's actual knowledge of Barnette's location is irrelevant for purposes of this assignment of error.[21] We hold that Barnette has not met his burden of rebutting the statutory presumption that Pontian's

---

[17] See *id.*

[18] See *id.*

[19] See *Wisner, supra* note 15.

[20] See *id.*

[21] See *id.*

notice was sufficient and that his second assignment of error is accordingly without merit.

(b) Misidentification of Guardian

In his second assignment of error, Barnette further argues that the notice was defective because it showed Guardian, rather than Pontian, as the party who would apply for the deed. HBI maintains that the error in listing Guardian was immaterial and did not negate the sufficiency of the notice.

Section 77-1831 provides:

No purchaser at any sale for taxes or his or her assignees shall be entitled to a deed from the treasurer for the real property so purchased unless such purchaser or assignee, at least three months before applying for the deed, serves or causes to be served a notice stating when such purchaser purchased the real property, the description thereof, in whose name assessed, for what year taxed or specially assessed, and that after the expiration of three months from the date of service of such notice the deed will be applied for.

[12] Pontian's notice included the information required and correctly listed Pontian as the party who had purchased the property. Further, this court has held that even the misidentification of the purchaser on the *actual* tax deed does not render it void. In *Ottaco Acceptance, Inc. v. Larkin*,[22] the purchaser of a tax certificate had later assigned the tax certificate to another entity. The assignee requested, and was issued, a tax deed for the property, but the tax deed incorrectly identified the assignee as the original purchaser of the property.[23] This court held that the tax deed was in compliance with the statutory requirements and that the misidentification would, at most, necessitate reformation of the tax deed.[24]

---

[22] *Ottaco Acceptance, Inc. v. Larkin*, 273 Neb. 765, 733 N.W.2d 539 (2007).

[23] See *id.*

[24] See *id.*

[13] We hold that the inclusion of Guardian as the party that would apply for the tax deed does not render the notice defective, as there is no language in § 77-1831 requiring that the party applying for the tax deed be included. This court will not read into a statute a meaning that is not there.[25]

As previously stated, Barnette's second assignment of error is without merit.

### 3. Constitutionality of Nebraska's Tax Sale Notice Requirements and Barnette's Due Process Rights

In his third and fourth assignments of error, Barnette argues Nebraska's statutory scheme for tax sales is unconstitutional on due process grounds. Specifically, Barnette asserts that his due process rights were violated when Pontian published its notice in Sarpy County pursuant to § 77-1834, knowing Barnette resides in Pottawattamie County, Iowa. The district court found that Pontian had complied with the statutory notice requirements before applying for the tax deed and that the procedures used did not violate Barnette's due process rights.

#### (a) Presumption of Constitutionality

[14,15] A statute is presumed to be constitutional, and all reasonable doubts are resolved in favor of its constitutionality.[26] The burden of establishing the unconstitutionality of a statute is on the one attacking its validity.[27] The unconstitutionality of a statute must be clearly established before it will be declared void.[28]

#### (b) Notice Requirement

Before the government may deprive a person of their property, the government must provide "notice reasonably

---

[25] See *Wisner, supra* note 15; *State v. Gill*, 297 Neb. 852, 901 N.W.2d 679 (2017); *State v. Mortensen*, 287 Neb. 158, 841 N.W.2d 393 (2014).

[26] *State ex rel. Bruning v. Gale*, 284 Neb. 257, 817 N.W.2d 768 (2012).

[27] *Id.*

[28] *Id.*

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[29] In *Mullane v. Central Hanover Tr. Co.*,[30] the U.S. Supreme Court held that when a recipient's address is known, the determination of whether the method of notice is "reasonably calculated" is analyzed at the time the notice is sent.[31]

### (c) *Jones v. Flowers*

In his brief, Barnette cites *Jones v. Flowers*[32] in support of his argument that Nebraska's tax deed notice requirements are unconstitutional. In that case, the U.S. Supreme Court held that the government's attempt at providing notice of a tax sale was insufficient to satisfy due process when the notice was returned as unclaimed and that the government failed to take additional reasonable steps to provide notice to the property owner before the property was sold.[33]

In *Jones*, the property owner had moved from his home in Little Rock, Arkansas, into an apartment in Little Rock after he and his wife were separated. The mortgage company had been paying the property taxes until the mortgage was paid off, and then the taxes became delinquent. Three years later, the Commissioner of State Lands (Commissioner) sent the owner, by certified mail, notice of the tax delinquency and information about his right to redeem the property. The certified letter was sent to the address of the property where the owner's wife still lived and was returned as "'"unclaimed."'"[34]

---

[29] *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

[30] *Mullane, supra* note 29.

[31] *Id.*, 339 U.S. at 318 ("[w]here the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency").

[32] *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006).

[33] *Id.*

[34] *Id.*, 547 U.S. at 224.

Two years later, the Commissioner published a notice of public sale in the newspaper. The publication occurred a few weeks prior to the public sale. The Commissioner mailed a second certified letter after receiving a purchase offer for the home, warning the house would be sold if the delinquent taxes were not paid. Again, the letter was returned as "'unclaimed.'"[35] The owner was eventually notified of the sale when the purchaser had an unlawful detainer notice delivered to the property, and the notice was served on the owner's daughter.

The owner in *Jones* filed a lawsuit against the Commissioner and the purchaser, alleging that the Commissioner's failure to provide notice of the tax sale and the right to redeem constituted a taking of his property without due process. The trial court granted summary judgment in favor of the Commissioner and the purchaser, and the Arkansas Supreme Court affirmed, holding that the Commissioner's attempt to provide notice by certified mail satisfied due process. The U.S. Supreme Court reversed, holding 5 to 3 that under the circumstances presented, "[t]he Commissoner's effort to provide notice to [the owner] of an impending tax sale of his house was insufficient to satisfy due process . . . ."[36]

The Court in *Jones* recognized that Arkansas' statutory scheme for providing notice of a tax sale likely satisfied the requirements for due process because sending certified mail to an address that the owner was required by law to keep updated is reasonably calculated to reach the property owner. However, in examining the "'practicalities and peculiarities of the case,'"[37] the Court compared the Commissioner's knowledge of ineffective service to sending notice with actual knowledge that the notice was unlikely to reach the recipient because he was imprisoned or incompetent. Because the letter concerned the "important and irreversible" prospect

---

[35] *Id.*

[36] *Id.*, 547 U.S. at 239.

[37] *Id.*, 547 U.S. at 230 (quoting *Mullane, supra* note 29).

of losing one's home, the Court held that additional steps were required.[38]

### (d) Constitutionality of §§ 77-1832 and 77-1834

In the present case, Barnette has failed to meet his burden of establishing Nebraska's statutory notice requirements are unconstitutional. Section 77-1832 authorizes notice by certified mail, return receipt requested, to the address where the property tax statement is mailed. If the record owner is unable to be served by certified mail, § 77-1834 authorizes notice by publication upon proof of compliance with § 77-1832 if the record owner lives at the address where the property tax statement was mailed.[39]

[16,17] Because § 77-1832 requires service at the address where the property tax statement is mailed, it is reasonably calculated to provide notice to the property owner.[40] Further, notice by publication under § 77-1834 is limited to circumstances, such as those presented here, where the record owner resides at the address where the property tax statement is mailed, but he or she is unable to be served there.[41] For these reasons, we hold that the applicable notice requirements are constitutionally sufficient.

### (e) Barnette's Right to Due Process

Barnette has also failed to establish that issuance of the tax deed was in violation of his due process rights. In *Dusenbery v. United States*,[42] the U.S. Supreme Court recognized that the use of the postal service to send certified mail is "a method our cases have recognized as adequate *for known addresses*."[43]

---

[38] *Id.*, 547 U.S. at 230.

[39] See *Wisner, supra* note 15.

[40] See *Jones, supra* note 32.

[41] See *id.*

[42] *Dusenbery v. United States*, 534 U.S. 161, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002).

[43] *Id.*, 534 U.S. at 169 (emphasis supplied).

The Court confirmed that in determining whether due process requirements are satisfied, it is the *method* of notice that is analyzed and not the result.[44] In *Jones*, the Court articulated that "the failure of notice in a specific case does not establish the inadequacy of the attempted notice."[45] And, when assessing the adequacy of notice, "unique information about an intended recipient" must be considered.[46]

The test in *Jones* for the constitutional sufficiency of notice is case specific and analyzes whether the action was something that someone "'desirous of actually informing'" the homeowner would do.[47] Because additional reasonable steps were available to the State, given the circumstances, the Commissioner's effort to provide notice to the owner was insufficient to satisfy due process. What is "reasonable in response to new information depends upon what the new information reveals."[48]

The dissent, and the authority it cites, interprets *Jones* as establishing a new rule requiring the government to make additional attempts at providing notice each time notice is returned as unclaimed. However, the *Jones* Court explicitly stated: "[W]e disclaim any 'new rule' that is 'contrary to *Dusenbery* and a significant departure from *Mullane*.'"[49]

### (i) Sufficient Notice Under
Dusenbery *and* Mullane

The test in *Dusenbery* for the constitutional sufficiency of notice is whether the chosen method is "'reasonably calculated' to apprise a party of the pendency of the action."[50] As discussed above, both *Dusenbery* and *Mullane* recognized that

---

[44] See *Dusenbery, supra* note 42.

[45] *Jones, supra* note 32, 547 U.S. at 231.

[46] *Id.*, 547 U.S. at 230.

[47] *Id*.

[48] *Id.*, 547 U.S. at 234.

[49] *Id.*, 547 U.S. at 238.

[50] *Dusenbery, supra* note 42, 534 U.S. at 170.

when a recipient's address is known, sending notice by certified mail satisfies due process.[51]

Under the circumstances presented here, Pontian's attempt to provide Barnette with notice of its intent to apply for a tax deed failed; however, under both *Dusenbery* and *Mullane*, the attempted notice was adequate. Pontian had actual knowledge of Barnette's address in Iowa and sent notice to that address. This knowledge is one of the "'practicalities and peculiarities of the case'"[52] and must be taken into account when assessing the adequacy of notice. Because Pontian had actual knowledge of Barnette's address, the method of service was reasonably calculated to apprise Barnette of Pontian's intent to apply for a tax deed. Accordingly, we hold that the notice was constitutionally sufficient.

The dissent contends that the focus of *Jones* was on the *fact* that the certified mail went unclaimed. We disagree. In *Jones*, the Court was clearly focused on two "'practicalities and peculiarities of the case'"[53] that may vary the notice required:[54] the government's knowledge and the fact that the property interest at stake was the owner's *home*.

### (ii) "New Wrinkle" in Jones

The "new wrinkle" presented in *Jones* was whether the government's knowledge that notice has failed vitiates the reasonableness of the method used under the circumstances presented. This is demonstrated by the Court's extensive reliance on two of its prior holdings: *Robinson v. Hanrahan*[55] and *Covey v. Town of Somers*.[56]

---

[51] See, *Dusenbery, supra* note 42; *Mullane, supra* note 29.

[52] See *Jones, supra* note 32, 547 U.S. at 230.

[53] *Id.*

[54] *Id.*, 547 U.S. at 227 ("question presented is whether such knowledge on the government's part is a 'circumstance and condition' that varies the 'notice required'").

[55] *Robinson v. Hanrahan*, 409 U.S. 38, 93 S. Ct. 30, 34 L. Ed. 2d 47 (1972).

[56] *Covey v. Town of Somers*, 351 U.S. 141, 76 S. Ct. 724, 100 L. Ed. 1021 (1956).

*Robinson* involved a forfeiture proceeding where the State had complied with the statutory requirements for providing notice, but knew the owner was incarcerated at the time. The Court held that the State's manner of service was not reasonably calculated to apprise the owner of the proceeding because the State knew the individual was not at the address to which the notice was mailed and knew that the individual was unable to get to that address at the time the notice was sent.[57] Similarly, in *Covey*, the Court held that notice of foreclosure by mailing, posting, and publication did not satisfy due process requirements because government officials knew that the property owner was incompetent and that she did not have the protection of a guardian.

*Jones* did not create a formulaic test for deciding when additional attempts at notice are required. The Court determined the return of the owner's letter as unclaimed constituted "new information" revealed to the government.[58] That information must then be taken into account as one of the "'practicalities and peculiarities of the case'" when determining whether the attempt at notice was adequate.[59] If the attempt was not adequate, there is an obligation to take additional steps that are reasonable under the circumstances, "if practicable to do so."[60]

The new information presented in *Jones* was that the owner had either (1) moved from the address or (2) failed to retrieve the certified letter from the post office. Based on this conclusion, the Court provided examples of reasonable steps that could have been implemented after the letter's return. In doing so, the Court advised: "What steps are reasonable in response to new information depends upon what the new information reveals."[61]

---

[57] *Robinson, supra* note 55.

[58] *Jones, supra* note 32, 547 U.S. at 234.

[59] See *id.*, 547 U.S. at 230.

[60] See *id.*, 547 U.S. at 234.

[61] *Id.*

### (iii) Balancing Interests

"'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'"[62] In *Mathews v. Eldridge*,[63] the U.S. Supreme Court instructed that in determining whether the procedures used in providing notice are constitutionally sufficient, the governmental and private interests are analyzed using three distinct factors. These factors include:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[64]

In *Jones*, the Court reaffirmed that the reasonableness of notice requires "[b]alancing a State's interest in efficiently managing its administrative system and an individual's interest in adequate notice . . . ."[65] When concluding that notice to the owner was inadequate, the Court gave special importance to the fact that the property owner was "in danger of losing his house."[66] The Court stated:

> In this case, the State is exerting extraordinary power against a property owner—taking and selling *a house* he owns. It is not too much to insist that the State do a bit more to attempt to let him know about it when the notice letter addressed to him is returned unclaimed."[67]

---

[62] *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

[63] *Mathews, supra* note 62.

[64] *Id*., 424 U.S. at 335.

[65] *Jones, supra* note 32, 547 U.S. at 240.

[66] *Id.*, 547 U.S. at 238.

[67] *Id.*, 547 U.S. at 239 (emphasis supplied).

And, "when a letter is returned by the post office, the sender will ordinarily attempt to resend it, if it is practicable to do so. . . . This is especially true when . . . the subject matter of the letter concerns such an important and irreversible prospect as the loss of *a house*."[68] The Court emphasized: "We do not think that a person who actually desired to inform a real property owner of an impending tax sale of *a house* he owns would do nothing when a certified letter sent to the owner is returned unclaimed."[69]

While the property at issue is one factor to be considered, we do not, as the dissent suggests, limit *Jones* to cases involving houses. The fact that *Jones* involved an occupied house was information that must be considered when determining whether the notice was adequate. "[A]ssessing the adequacy of a particular form of notice requires balancing the 'interest of the State' against 'the individual interest sought to be protected by the Fourteenth Amendment.'"[70]

In *Jones*, the Court was balancing the government's interest against the owner's interest in an occupied home, and evidence was presented to show that Arkansas' statutes already required a homeowner to be served by personal service if certified mail is returned. Here, Barnette is attacking the constitutionality of the tax deed issued to Pontian. There is a presumption of constitutionality, and Barnette has the burden of establishing that his due process rights were violated.[71]

---

[68] *Id.*, 547 U.S. at 230 (emphasis supplied).

[69] *Id.*, 547 U.S. at 229 (emphasis supplied). See, also, *id.*, 547 U.S. at 229 ("we evaluate the adequacy of notice prior to the State extinguishing a property owner's interest in *a home*") (emphasis supplied); *id.*, 547 U.S. at 238 ("at the end of the day, that someone who actually wanted to alert [the owner] that he was in danger of losing his *house* would do more when the attempted notice letter was returned unclaimed, and there was more that reasonably could be done") (emphasis supplied).

[70] *Id.*, 547 U.S. at 229 (quoting *Mullane, supra* note 29).

[71] See *Stenger v. Department of Motor Vehicles*, 274 Neb. 819, 743 N.W.2d 758 (2008).

Because the particular situation dictates what procedural due process protections are required,[72] it is Barnette's burden to demonstrate that he is entitled to the same procedural safeguards as those required in *Jones*. Yet, the record is void of any evidence regarding the burden on the government, and Barnette has presented no evidence demonstrating his property was anything more than a vacant lot.

#### (iv) Reasonable Steps

Based on the specific facts presented in *Jones*, the Court suggested sending a letter by regular mail so that a signature was not required, posting notice on the front door of the property, or addressing mail to "occupant" would be reasonable. These additional steps were deemed reasonable because Arkansas' statutes already required a homeowner to be served by personal service if certified mail is returned. And, the property at issue was an occupied home.

Balancing the State's interest in efficiency against the owner's property interest in his home, the Court in *Jones* rejected as unreasonable the suggestion that the government should conduct a search for the owner's new address in the local phonebook and government records. The Court determined the government was not required to go that far because such a requirement would impose too great a burden. The Court also noted that "'[i]t is not [the Court's] responsibility to prescribe the form of service that the [government] should adopt.'"[73]

#### (v) Desirous of Actually Informing

In *Jones*, the Court explained that "'when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.'"[74] Thus, if the return of the notice

---

[72] See *Mathews, supra* note 62.

[73] *Jones, supra* note 32, 547 U.S. at 238 (quoting *Greene v. Lindsey*, 456 U.S. 444, 102 S. Ct. 1874, 72 L. Ed. 2d 249 (1982)).

[74] *Id.* (quoting *Mullane, supra* note 29).

as unclaimed is new knowledge indicating the chosen method of service is not "desirous of actually informing," additional reasonable steps are required—but only if such steps are practicable.[75]

In the present case, Pontian's knowledge that the certified letter had been returned as unclaimed did not indicate that its method of service was not desirous of actually informing Barnette. Pontian sent notice to Barnette by certified mail, return receipt requested, to the address where the property tax statement was mailed, as required by § 77-1832. Prior to returning the notice as unclaimed, the post office had made three attempts to deliver the notice. After it was returned as unclaimed, Pontian proceeded to notice by publication in a Sarpy County newspaper, as permitted by § 77-1834.

### (vi) Practicalities and Peculiarities of Case

*Jones* does not preclude the conclusion we reach today. This case involves substantially different facts and circumstances from those presented in *Jones*. Other states have rejected the argument that additional steps are required after notice sent to a property owner's last known and actual address was returned as unclaimed or where property owners have failed to present evidence that they were either not home or not available to claim the notice.

The North Carolina Court of Appeals rejected a property owner's argument that *Jones* required additional steps after a notice was returned as unclaimed and held that the notice sent to the property owner's last known and actual address complied with due process requirements.[76] The Supreme Court of New York, Appellate Division, recognized that when mailings had been sent to the property owners' current and correct addresses but returned as unclaimed, the lack of evidence indicating

---

[75] *Id.*

[76] *St. Regis of Onslow County v. Johnson*, 191 N.C. App. 516, 663 S.E.2d 908 (2008).

property owners were not home or legitimately unavailable to sign for the letter was "'unique information about [the] intended recipient[s]'" to be taken into account when determining whether notice was reasonable.[77]

Addressing the sufficiency of notice in a breach of contract action, the Pennsylvania Court of Common Pleas has also held that "[w]hen a letter is returned as 'refused' or 'unclaimed,' the notice is sufficient if it is apparent that the address was valid and could be located by the postal office."[78] In *Mikhaylov v. U.S.*,[79] the U.S. District Court for the Eastern District of New York similarly recognized that in the context of asset forfeiture, "[a] written notice sent, via certified mail, to any known addresses, combined with published notices, ordinarily satisfies the *Mullane* standard." The court stated:

> The only arguable exceptions are: where the government knows or should know that the written notice will not reach the intended recipient (*e.g.*, the written notice is returned as undeliverable), *and* it can obtain the recipient's correct address internally (*e.g.*, the recipient is already in the government's custody). . . . Or, where the government knows or should know that the intended recipient will not understand the written notice (*e.g.*, the recipient lacks the mental capacity).[80]

Here, Barnette's actual address was known and the notice was correctly sent to that address. In contrast to *Jones*,[81] the property at issue in this case was not Barnette's home. Barnette's home is in Council Bluffs, Iowa, where he has

---

[77] *Temple Bnai Shalom of Great Neck v. Village of Great Neck Estates*, 32 A.D.3d 391, 393, 820 N.Y.S.2d 104, 106 (2006) (quoting *Jones, supra* note 32).

[78] *Masergy Communications, Inc. v. Atris, Inc.*, No. 06-24948, 2007 WL 5479856 (Pa. Com. Pl. Oct. 4, 2007).

[79] *Mikhaylov v. U.S.*, 29 F. Supp. 3d 260, 267 (E.D.N.Y. 2014).

[80] *Id.* at 267-68.

[81] *Jones, supra* note 32.

continuously resided throughout the entire tax sale process and admits to having received tax notices for the property at issue there. Because Pontian's notice was sent to Barnette's actual address, the only new information revealed by the return of the letter was that either (1) Barnette had not been home during the attempts at delivery, and then failed to retrieve the letter from the post office, or (2) Barnette had been avoiding service.

The dissent cites two cases in support of its position. However, there is a distinct difference between the factual circumstances in those cases and the one before us today. In each case, the property owner had denied having actual notice of the pending proceedings. Moreover, in *Schlereth v. Hardy*,[82] the court found that the property owner "was not offered a certified letter by the postal worker that she refused to accept—she simply failed to retrieve a letter, the substance of which was unknown to her."

Again, it is Barnette's burden to establish issuance of the tax deed was unconstitutional.[83] However, he has not offered any evidence to show that the notice was not reasonably calculated to apprise him of Pontian's intent to apply for a tax deed. During oral argument, Barnette's counsel admitted there was no evidence in the record regarding why Barnette had not accepted the letter. Barnette has not alleged that he was unaware of the attempts at service or that he was unavailable to claim the letter. Barnette has also not alleged a lack of actual knowledge of Pontian's intent to apply for a tax deed. This differs from the property owner in *Jones* who had demonstrated that he had only learned of the pendency of the proceedings after his home had already been sold.[84]

Sending notice to Barnette at his actual residence demonstrates Pontian was desirous of actually informing Barnette of its intention to apply for a tax deed. Accordingly, we hold that

---

[82] *Schlereth v. Hardy*, 280 S.W.3d 47, 52 n.4 (Mo. 2009).

[83] See *Stenger, supra* note 71.

[84] See *Jones, supra* note 32.

the notice was constitutionally sufficient under the standard articulated in *Jones*.

The dissent correctly asserts that sending Barnette notice by regular mail would have imposed little burden on Pontian. However, regardless of the level of burden imposed, Pontian was not obligated to do so. The Court of Appeals of New York rejected a similar argument when holding that the government was not required to take additional steps under *Jones* after tax bills and a notice of foreclosure proceeding were sent by regular mail, but returned as undeliverable because the owners had not shown that there were any steps that would have yielded the owners' new address.[85] Here, the burden lies on Barnette, and he has presented no evidence to show that there were additional reasonable steps and that these additional steps would be practicable.

Even assuming the dissent's interpretation of *Jones* is correct, and the return of notice as unclaimed independently triggers an obligation to take additional reasonable steps when notice is sent to the property owner's actual residence, these steps are still not constitutionally required unless it is "practicable to do so."[86] The Oxford English Dictionary defines "practicable" as "[a]ble to be done or put into practice successfully; feasible; able to be used; useful, practical, effective."[87]

The U.S. Court of Appeals for the Seventh Circuit has recognized: "The Constitution does not require that an effort to give notice succeed. . . . If it did, then people could evade knowledge, and avoid responsibility for their conduct, by burning notices on receipt—or just leaving them unopened . . . ."[88]

---

[85] *Mac Naughton v. Warren County*, 20 N.Y.3d 252, 982 N.E.2d 1237, 959 N.Y.S.2d 104 (2012).

[86] See *Jones, supra* note 32, 547 U.S. at 234.

[87] "Practicable," Oxford English Dictionary Online, http://www.oed.com/view/Entry/149217 (last visited Apr. 4, 2020).

[88] *Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir. 2009) (citing *Dusenbery, supra* note 42).

In this case, regular mail (or mail addressed to "occupant") would not likely have been useful or effective, especially given the fact Barnette has not alleged that he was unaware of the delivery attempts or that he was unavailable to claim the letter.

To the extent the dissent discusses Neb. Rev. Stat. § 25-520.01 (Reissue 2016) and its requirement that along with publication, parties must mail a copy of the published notice to all parties having a direct legal interest in the action when the party's name and address are known, the Legislature has not included the same requirement when publishing under § 77-1834. While the inclusion of such a requirement may be appropriate, its absence does not affect the constitutionality of the notice provided in the case before us.

Under the totality of circumstances presented, Pontian's attempt at notice was "'desirous of actually informing'" Barnette of its intent to apply for a tax deed.[89] Pontian complied with §§ 77-1832 and 77-1834 and was not required to publish notice anywhere other than Sarpy County. Accordingly, we hold that the notice was constitutionally sufficient.

There is no merit to Barnette's third and fourth assignments of error.

### 4. Action to Quiet Title

In his fifth assignment of error, Barnette reasserts his claims of defective notice and service and argues the statutory time period for obtaining a deed to the property has expired. As set forth above, Pontian's notice of its intent to apply for a tax deed was not defective. This argument is meritless.

### VI. CONCLUSION

Pontian complied with the statutory notice requirements for obtaining a tax deed. Because the requirements are reasonably calculated to apprise a property owner of a tax certificate holder's intent to apply for a tax deed, they are constitutionally

---

[89] See *Jones, supra* note 32, 547 U.S. at 230.

sufficient. Barnette has failed to meet his burden of establishing the tax deed is invalid. The judgment of the district court is affirmed.

Affirmed.

Cassel, J., concurring.

I agree with the court that HBI correctly followed Neb. Rev. Stat. § 77-1831 (Reissue 2009) regarding notice that must be given upon tax deed issuance. And I agree that under the circumstances here, there was no due process violation.

But I write separately to suggest that the Legislature may wish to follow the example of Neb. Rev. Stat. § 25-520.01 (Reissue 2016), which was adopted in response to *Mullane v. Central Hanover Tr. Co.*[1] The Legislature may find it prudent to amend Neb. Rev. Stat. § 77-1835 (Supp. 2019) to provide that where notice by publication is given, the party giving such notice shall send by U.S. mail a copy of the first such published notice to the record owner of the property.

---

[1] *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

Papik, J., dissenting.

"Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones v. Flowers*, 547 U.S. 220, 223, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006), quoting *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950). I believe that under the U.S. Supreme Court's opinion in *Jones*, Pontian provided constitutionally inadequate notice of its intent to apply for a treasurer's deed for Barnette's property. While the majority finds this case distinguishable from *Jones*, I do not.

In this dissent, I will first explain how I read *Jones* and how I understand it to apply here. I will then address the majority's position that my reading of *Jones* is incorrect.

Jones v. Flowers *and Unclaimed
Certified Mail.*

As the majority explains, *Jones* involved a fact pattern similar to the one before us. After the longtime owner of a house separated from his wife and moved out, taxes on the house were not paid. A government official later sent notice of the delinquency and information about how to redeem the property by certified mail to the address where the owner no longer lived. It was returned unclaimed. Two years later, the government official published a notice of public sale of the house in a local newspaper. When a purchase offer was received for the home, the government official sent another certified letter, warning that the house would be sold if the delinquent taxes were not paid. Once again, the certified mail was returned unclaimed. The owner did not learn of the sale until the purchaser had an unlawful detainer notice sent to the property, which was served on the owner's daughter.

The owner's lawsuit alleging that his house was being taken without due process eventually reached the U.S. Supreme Court. In an opinion authored by Chief Justice Roberts, the Court first acknowledged that due process does not require actual notice before the government may take property and that in prior cases, it had deemed notice constitutionally adequate if it was reasonably calculated to reach the intended recipient when sent. The Court also noted its precedent, including *Dusenbery v. United States*, 534 U.S. 161, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002), and *Mullane, supra*, generally permitting service by mail.

The Court explained, however, that *Jones* presented a "new wrinkle": whether due process requires additional steps "when the government becomes aware prior to the taking that its attempt at notice has failed." 547 U.S. at 227. The Court concluded that reasonable followup measures are required in such circumstances, reasoning that no one who "actually desired to inform a real property owner of an impending tax sale of a house he owns would do nothing when a certified

letter sent to the owner is returned unclaimed." *Jones v. Flowers*, 547 U.S. 220, 229, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006).

The Court went on to conclude that there were reasonable, additional steps the government official could have taken, including resending the notice by regular mail or posting notice on the front door. The Court explained that such steps would increase the likelihood of a property owner receiving actual notice. Finally, the Court concluded that following up by publication was constitutionally inadequate.

I agree with Barnette that under *Jones*, the notice here was constitutionally inadequate. The notice sent by certified mail was returned unclaimed. I read *Jones* to tell us rather plainly that in that circumstance, the State must take additional, reasonable steps to provide notice if it is practicable to do so. 547 U.S. at 225 ("[w]e hold that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so").

Because I believe this case is controlled by *Jones*, I would go on to consider, as the Court did in *Jones*, whether Pontian took additional, reasonable measures to notify Barnette after the certified mail went unclaimed. It quickly becomes clear to me it did not.

As noted above, *Jones* concluded there were other, reasonable steps that could have been taken after the attempt to provide notice by certified mail failed. The Court mentioned resending the notice by regular mail or posting notice on the front door. The Court explained that such steps would increase the likelihood of the property owner receiving actual notice whether the property owner had moved or had simply not retrieved the certified mail.

I see no reason why those reasonable, additional steps could not have been taken here. Pontian, for example, could have followed the normal practice in Nebraska of sending the published notice to those with an interest in a proceeding by

regular mail at the same time the notice was published. In most instances in which a party is allowed to provide notice by publication, Nebraska law requires that, along with publication, the party mail a copy of the published notice to "each and every party appearing to have a direct legal interest in such action or proceeding whose name and post office address are known to him." Neb. Rev. Stat. § 25-520.01 (Reissue 2016). A mailing of published notice does not appear to have been statutorily required in this unique context, see Neb. Rev. Stat. § 25-520.02 (Reissue 2016), but sending the published notice by regular mail would have required little more of Pontian and would have eliminated any argument that it provided constitutionally inadequate notice under *Jones*. As the majority acknowledges, sending Barnette notice by regular mail after the certified mail went unclaimed would have imposed little burden on Pontian. Pontian, however, did nothing except publish notice after the certified mail was returned unclaimed. In *Jones*, publication was deemed to be inadequate. See *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006).

Because Pontian did not, after the certified mail was returned unclaimed, take reasonable, additional steps to attempt to notify Barnette when it was practicable to do so, I do not believe it provided constitutionally adequate notice. The majority, however, finds the notice was adequate based on a different reading of *Jones*. I explain why I disagree with that reading below.

*Majority's Understanding of* Jones*.*

The majority concludes that the notice sent by certified mail that was returned unclaimed was sufficient to satisfy due process notwithstanding *Jones*. As I understand the majority opinion, it concludes that *Jones* does not apply in this circumstance because it is not clear that the piece of property being taken and sold by the government includes a house, because the certified mail that went unclaimed was addressed to the place where Barnette lived, and because it finds that the additional steps discussed in *Jones* likely would have failed.

I do not read the application of *Jones* to turn on the facts identified by the majority. Take first, the majority's determination that *Jones* has no bearing here because *Jones* involved the taking of a house and, as the majority puts it, nothing in the record demonstrates the property being taken here "was anything more than a vacant lot." The majority identifies a number of occasions in which the U.S. Supreme Court in *Jones* referred to the fact that the property being sold was a house and that such an action is an important and extraordinary act. For multiple reasons, I understand these references to emphasize the significance and irreversibility of the government's taking property from its owner and selling it, not to, in the majority's words, attribute "special importance" to the fact that the property being sold was a house.

Not only is that, in my view, a more natural reading, in many other places in *Jones*, the U.S. Supreme Court frames its analysis in terms of the taking of property in general. The Court stated that it granted certiorari "to determine whether, when notice of a tax sale is mailed to the owner and returned undelivered, the government must take additional reasonable steps to provide notice before taking *the owner's property*." *Jones*, 547 U.S. at 223 (emphasis supplied). It further explained that it took the case "to resolve a conflict among the Circuits and State Supreme Courts concerning whether the Due Process Clause requires the government to take additional reasonable steps to notify *a property owner* when notice of a tax sale is returned undelivered." *Id.*, 547 U.S. at 225 (emphasis supplied). And in stating its holding, the Court said, "We hold that when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to *the property owner* before selling *his property*, if it is practicable to do so." *Jones v. Flowers*, 547 U.S. 220, 225, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006) (emphasis supplied).

I would also note that I find the conclusions the majority draws from a house being at issue in *Jones* difficult to square

with the facts of *Jones* itself. As the majority emphasizes, the property owner in *Jones* did not actually reside at the house that was being taken and sold by the government. The interest of the property owner in *Jones* was thus not that of someone whose *residence* was being sold out from under him. And while a nonresident owner undoubtedly has a significant interest in a house he or she owns, I do not see how such an interest would, for due process purposes, be more significant than a property owner's interest in, say, a building used for business purposes, farmland, or any other piece of real property, even "a vacant lot."

Neither am I persuaded by the majority's conclusion that *Jones* does not apply when, as here, the unclaimed certified mail was sent to the address at which the property owner lives. I concede that, at least at first blush, this distinction identified by the majority seems meaningful. A compelling argument can certainly be made that a person like the homeowner in *Jones* who never has the opportunity to accept certified mail is more deserving of additional attempts at notice than Barnette who, for reasons that are not clear, did not sign for certified mail sent to the home where he resides. One might add to that argument that a finding that Barnette was provided with inadequate notice could create an incentive for delinquent taxpayers to evade certified mail. See *Jones*, 547 U.S. at 248 (Thomas, J., dissenting) ("[t]he meaning of the Constitution should not turn on the antics of tax evaders and scofflaws"). But as compelling as I might find the policy arguments for the majority's position, I do not believe that *Jones* can fairly be read to allow for it.

In holding that knowledge that notice has been returned unclaimed requires the State to consider additional action, *Jones* does not focus on the *reason* that the certified mail went unclaimed. Its focus is instead on the *fact* that the certified mail went unclaimed. The Court concluded that because the certified mail went unclaimed, the government official knew the attempt to actually notify the homeowner had failed and

therefore, if practicable, additional steps were required. See *id.*, 547 U.S. at 225 ("when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice . . . if it is practicable to do so").

But not only does *Jones* not focus on the owner's living somewhere other than the address where the certified mail was sent, it explicitly discusses the possibility that certified mail might go unclaimed by a person residing at the address where the certified mail is sent. 547 U.S. at 234 ("[t]he return of the certified letter marked 'unclaimed' meant either that [the owner] still lived at [the address where the certified mail was sent], *but was not home when the postman called and did not retrieve the letter at the post office*, or that [the owner] no longer resided at that address") (emphasis supplied). The opinion does not, however, conclude that a person who does not retrieve certified mail sent to his or her residence has received constitutionally adequate notice. To the contrary, it discusses how the required additional attempts at providing notice such as resending the notice by regular mail or posting notice on the front door would address both the possibility that the homeowner no longer lived at the address but also that he "had simply not retrieved the certified letter." *Jones v. Flowers*, 547 U.S. 220, 235, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006). For better or for worse, *Jones* treats alike property owners who do not claim certified mail because they have moved and property owners who simply fail to retrieve certified mail—neither receive notice when certified mail goes unclaimed and the additional steps are aimed at providing notice to both types of parties.

For this reason, I cannot agree with the majority that Pontian's attempt at notice was "desirous of actually informing" Barnette of its intent to apply for a tax deed. The majority focuses exclusively on whether Pontian's attempt to notify Barnette of an impending tax sale was "desirous of actually informing" when the certified mail was sent. Under *Jones*,

however, that is not the end of the inquiry, at least when certified mail is returned unclaimed. Under *Jones*, once certified mail is returned unclaimed, it is not enough that the notice by certified mail was "desirous of actually informing" when sent.

I also do not believe the majority is correct to conclude that even if *Jones* applies, Pontian was not required to take additional steps after the certified mail went unclaimed. The majority concludes Pontian was not required to do so because, it says, any additional steps would not likely have succeeded because there is nothing in the record that indicates why the certified mail went unclaimed in the first place. I do not believe that is relevant. When *Jones* concluded that additional steps such as sending the notice by regular mail or posting the notice on the front door were reasonable and available, it did not do so by considering whether those steps would have provided notice to the property owner in the case before it. It concluded that such steps were "practicable" because they would "increase the chances of actual notice" whether the property owner had moved or had simply not retrieved the certified mail sent to his home. *Id.*, 547 U.S. at 234, 235. I do not believe we can second-guess that determination here.

*Other Authority.*

The majority also relies on a number of cases in support of its more limited understanding of *Jones*. Just as I disagree with the majority's understanding of *Jones*, I am not persuaded by its reliance on other cases.

In my view, many of the cases cited by the majority do not even speak to the issues at hand. For example, the majority notes that in *St. Regis of Onslow County v. Johnson*, 191 N.C. App. 516, 663 S.E.2d 908 (2008), the North Carolina Court of Appeals rejected a property owner's argument that *Jones* required additional steps after a notice was returned unclaimed. That is true enough, but the court did not do so for any of the reasons the majority relies on here. The court concluded that

notice was sufficient because in that case the notices were returned unclaimed *after* the property had been sold and thus the obligation to take additional steps to effect notice was never triggered.

The majority also cites language from a Pennsylvania trial court decision to the effect that even if letters are returned unclaimed, the notice is sufficient if sent to a valid address. See *Masergy Communications, Inc. v. Atris, Inc.*, No. 06-24948, 2007 WL 5479856 (Pa. Com. Pl. Oct. 4, 2007). In support of that proposition, however, the court cited cases that predated *Jones*. The court only mentioned *Jones* in a footnote, also distinguishing it on grounds not relied on by the majority here.

I also cannot agree that *Mikhaylov v. U.S.*, 29 F. Supp. 3d 260 (E.D.N.Y. 2014), supports the majority's position. At issue in that case was whether the government provided notice consistent with due process before seizing property in a drug forfeiture case. The government sent notice of the forfeiture to the property owner's last known address by certified mail. The property owner had moved away, but someone else signed for it. The property owner argued that he was entitled to actual notice, and the court disagreed. Because the notice was not returned unclaimed, the court's opinion, unsurprisingly, does not discuss *Jones*.

Despite the absence of any mention of *Jones* in *Mikhaylov*, the majority splices together two quotes from the opinion and appears to suggest those quotes support its position. The first quote is a recitation of a principle of blackletter law with which neither I nor anyone else could quibble: "A written notice sent, via certified mail, to any known addresses, combined with published notices, *ordinarily* satisfies the *Mullane* standard." *Mikhaylov*, 29 F. Supp. 3d at 267 (emphasis supplied). In the next sentence of the majority opinion, the majority quotes from language appearing *two paragraphs later* in *Mikhaylov* discussing "[t]he only arguable exceptions." *Id.* To the extent the majority intends to suggest that *Mikhaylov*

was articulating "[t]he only arguable exceptions" to its earlier statement that certified mail sent to a known address ordinarily satisfies *Mullane*, it is mistaken. The two paragraphs in between the portions quoted by the majority make clear that the court was discussing "arguable exceptions" to the rule that actual notice is not required to satisfy due process. *Mikhaylov*, 29 F. Supp. 3d at 267. *Jones* did not require actual notice, and no one is suggesting that actual notice is required here.

The majority does cite two cases, *Temple Bnai Shalom of Great Neck v. Village of Great Neck Estates*, 32 A.D.3d 391, 820 N.Y.S.2d 104 (2006), and *Mac Naughton v. Warren County*, 20 N.Y.3d 252, 982 N.E.2d 1237, 959 N.Y.S.2d 104 (2012), that appear to align with the majority's understanding of *Jones* to some degree. But *Temple Bnai Shalom of Great Neck* declined to apply *Jones* based, in part, upon the reason certified mail went unclaimed and *Mac Naughton* declined to do so based upon a determination that additional efforts would not have resulted in notifying the owners in the case before it. As I have already explained, I do not believe either approach is consistent with *Jones*.

While on the subject of authority, I note that others have read *Jones* as I do. In *Schlereth v. Hardy*, 280 S.W.3d 47 (Mo. 2009), the Missouri Supreme Court confronted a case like ours. In that case, certified mail was sent to the delinquent taxpayer's residence; the taxpayer received notifications of the attempt to deliver, but she failed to pick it up; and it was returned unclaimed. The person seeking to buy the delinquent taxpayer's home did not provide additional forms of notice. The Missouri Supreme Court unanimously held that, under *Jones*, the notice did not comply with due process. It concluded that after the certified mail was returned unclaimed, the sender was required to take reasonable, additional measures as articulated in *Jones*. With respect to the fact that the delinquent taxpayer received notification of the certified mail and failed to retrieve it, the court stated: "*Jones* did not concern itself with why the addressee failed to claim the certified letter. In

fact, the Supreme Court allowed for the possibility that the addressee, like [the delinquent taxpayer] simply would ignore the requests to pick up the certified letter." *Schlereth*, 280 S.W.3d at 51.

Similarly, in *VanHorn v. Florida*, 677 F. Supp. 2d 1288 (M.D. Fla. 2009), a federal district court concluded that, under *Jones*, the government was required to attempt additional reasonable steps at service, if practicable, even though the certified mail that went unclaimed was sent to the address where the property owner resided. The court pointed to the language in *Jones* discussed above that the government was required to "account not only for the possibility that (as in [*Jones*]) an unclaimed letter was delivered to an address at which the property owner did not reside but also 'that he had simply not retrieved the certified letter.'" *VanHorn*, 677 F. Supp. 2d at 1297, quoting *Jones v. Flowers*, 547 U.S. 220, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006).

*Conclusion.*

In closing, I respond to the majority's assertion that I read *Jones* to create a new rule when the *Jones* Court disavowed doing so. In fact, *Jones* did not altogether disavow the creation of a new rule; the Court said it was not creating a rule that "is contrary to *Dusenbery* and a significant departure from *Mullane*." 547 U.S. at 238. The dissent in *Jones* felt that this was not an accurate account of the opinion. 547 U.S. at 244 (Thomas, J., dissenting) ("[t]he majority's new rule is contrary to *Dusenbery* and a significant departure from *Mullane*"). And, as a matter of description, perhaps that is debatable.

But regardless of how *Jones* characterized its holding, we are bound to follow it. See, e.g., *State v. Thieszen*, 295 Neb. 293, 297, 887 N.W.2d 871, 875 (2016) ("[u]pon questions involving the interpretation of the U.S. Constitution, the decision of the U.S. Supreme Court is the supreme law, by which state courts are bound"). Respectfully, I do not believe the majority opinion does. For that reason, I dissent.