## BELLINGHAM BAY & BRITISH COLUMBIA RAILROAD COMPANY *v.* NEW WHATCOM.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 96. Argued December 16, 1898. — Decided January 3, 1899.

An answer by the defendant in an action in a state court brought to enforce a lien created by a reassessment of taxes upon its real estate, which sets up that the notice of the reassessment was insufficient, and that by reason thereof its property was sought to be taken without due process of law, and in conflict with the terms of the Fourteenth Amendment to the Constitution, raises a Federal question of which this court has jurisdiction.

When a notice is duly given to landowners by municipal authorities in full accordance with the provisions of the statutes of the State touching the time and place for determining the amounts assessed upon their lands for the cost of street improvements, such notice, so authorized by the legislature, will not be set aside as ineffectual on account of the shortness of the time unless the case is a clear one.

In view of the character of the improvements in this case, of the residence of the plaintiff in error, of the almost certainty that it must have known of the improvements, and of the action of the Supreme Court of the State, ruling that the notice was sufficient, it is held by this court to have been sufficient.

Before proceedings for the collection of taxes, sanctioned by the Supreme Court of a State, are stricken down in this court, it must clearly appear that some one of the fundamental guarantees of right contained in the Federal Constitution has been invaded.

PRIOR to February 16, 1891, there were in the State of Washington two cities known as Whatcom and New Whatcom. On that date they were consolidated in conformity

with the general laws of the State, the consolidated city taking the title of the "City of New Whatcom." In July, 1890, and prior to the consolidation, New Whatcom ordered the improvement of Elk street, between Elk street east and North street. The contract therefor was let in August, 1890. The contract was completed and the improvement accepted by the city, and in October, 1890, an assessment was levied upon the abutting property. After the consolidation the present city of New Whatcom commenced several suits in the superior court of Whatcom County against various defendants owning lots abutting on the improvement, and sought to obtain decrees foreclosing the liens created by the assessment. On January 13, 1894, the superior court entered decrees annulling the assessment, and these decrees were affirmed by the Supreme Court of the State on February 14, 1895. The ground of the decision was, as stated by the trial court in its conclusions of law, "that said assessments were not made or apportioned in accordance with the benefits received by the property, but were made upon an arbitrary rule, irrespective of the benefits." On March 9, 1893, the legislature passed a general act providing for the reassessment of the cost of local improvements in case the original assessment shall have been or may be directly or indirectly set aside, annulled or declared void by any court. Laws Wash. 1893, p. 226.

Sections 4, 5 and 8 bear upon the matter of notice, and are as follows:

"Sec. 4. Upon receiving the said assessment roll the clerk of such city or town shall give notice by three (3) successive publications in the official newspaper of such city or town, that such assessment roll is on file in his office, the date of filing of same, and said notice shall state a time at which the council will hear and consider objections to said assessment roll by the parties aggrieved by such assessment. The owner or owners of any property which is assessed in such assessment roll, whether named or not in such roll, may within ten (10) days from the last publication provided herein, file with the clerk his objections in writing to said assessment.

" Sec. 5. At the time appointed for hearing objections to such assessment the council shall hear and determine all objections which have been filed by any party interested, to the regularity of the proceedings in making such reassessment and to the correctness of the amount of such reassessment, or of the amount levied on any particular lot or parcel of land; and the council shall have the power to adjourn such hearing from time to time, and shall have power, in their discretion, to revise, correct, confirm or set aside, and to order that such assessment be made *de novo*, and such council shall pass an order approving and confirming said proceedings and said reassessment as corrected by them, and their decision and order shall be a final determination of the regularity, validity and correctness of said reassessment, to the amount thereof, levied on each lot or parcel of land. If the council of any such city consists of two houses the hearing shall be had before a joint session, but the ordinance approving and confirming the reassessment shall be passed in the same manner as other ordinances."

" Sec. 8. Any person who has filed objections to such new assessment or reassessment, as hereinbefore provided, shall have the right to appeal to the superior court of this State and county in which such city or town may be situated."

On March 18, 1895, the city council passed an ordinance prescribing the mode of procedure for collecting the cost of a local reassessment upon the property benefited thereby. On June 10, 1895, it ordered a new assessment upon the blocks, lots and parcels of land benefited by the improvement on Elk street, hereinbefore described, and directed the various officers of the city to take the steps required by the general ordinance of March 18. These steps were all taken in conformity to such ordinance, and on August 7, 1895, a further ordinance was passed reciting what had been done, approving it and confirming the reassessment.

The recital in that ordinance in respect to notice was as follows:

"Whereas, said city council did on the 8th day of July, 1895, order said assessment roll filed in the office of the city

clerk, and fixed Monday, July 22, 1895, at 7.30 P.M., as a time at which they would hear, consider and determine any and all objections to the regularity of the proceedings in making such assessments, or to the amount to be assessed upon any block, lot or tract of land for said improvements; and

" Whereas, notice of such hearing was duly published in the official paper of the city of New Whatcom, to wit: in the Daily Reveille, in three consecutive issues thereof, the same being the issues of July 9, 10 and 11, 1895."

The Bellingham Bay and British Columbia Railroad Company was a private corporation, organized under the laws of the State of California, but authorized to do business in the State of Washington, and having its principal office in the city of New Whatcom. It was the owner of certain property abutting upon the Elk street improvement, and which by the proceedings of the city council was held benefited by such improvement and charged with a portion of the cost. Failing to pay this charge, the city of New Whatcom instituted suit in the superior court of Whatcom County to foreclose the liens created by the reassessment. A decree was rendered in favor of the city, which, on appeal, was affirmed by the Supreme Court on December 8, 1896, 16 Wash. St. 131, whereupon this writ of error was sued out.

*Mr. L. T. Michener* for plaintiff in error. *Mr. W. W. Dudley* and *Mr. John B. Allen* were on his brief.

No appearance for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

By its answer the defendant raised a Federal question, inasmuch as it alleged that the notice of the reassessment was insufficient, and specifically that by reason thereof its property was sought to be taken without due process of law and in conflict with the terms of the Fourteenth Amendment to the Constitution. This court, therefore, has jurisdiction of the case.

That notice of the reassessment was essential is not questioned, *Davidson* v. *New Orleans*, 96 U. S. 97, 105; *Hagar* v. *Reclamation District*, 111 U. S. 701, 710; Cooley on Taxation, 266; and that constructive notice by publication may be sufficient is conceded, *Lent* v. *Tillson*, 140 U. S. 316, 328; *Paulsen* v. *Portland*, 149 U. S. 30; but the contention is that the notice, which was provided for, and which was in fact given, was insufficient, because it was only a ten days' notice. We quote from the brief of counsel:

"While we concede in the first instance to the legislature the authority to prescribe the time of the notice, we assert that this is not an absolute authority relieved from judicial review. The shortening of the time and the limiting of opportunity to be informed through constructive notice may be such as to render the notice unavailing for the purpose for which notice is designed. If that be the case it is not notice. To prescribe that within ten days after the contingency of a three days' publication the landowner is left without redress for any kind of burden that may be placed upon his property in the way of taxation amounts to a taking of property without due process of law. Under the pretence of prescribing and regulating notice, all practical notice cannot be taken away. There is a limit to legislative power in shortening the time of notice, and if that limit is transcended the courts will hold it void."

We are unable to concur in these views. It may be that the authority of the legislature to prescribe the length of notice is not absolute and beyond review, but it is certain that only in a clear case will a notice authorized by the legislature be set aside as wholly ineffectual on account of the shortness of the time. The purpose of notice is to secure to the owner the opportunity to protect his property from the lien of the proposed tax or some part thereof. In order to be effectual it should be so full and clear as to disclose to persons of ordinary intelligence in a general way what is proposed. If service is made only by publication, that publication must be of such a character as to create a reasonable presumption that the owner, if present and taking ordinary care of his property, will receive the information of what is proposed

and when and where he may be heard. And the time and place must be such that with reasonable effort he will be enabled to attend and present his objections. Here no question is made of the form of the notice. It was published in three successive issues of the official paper of the city. So the statute required. What more appropriate way of publishing the action of a city than in its official paper? Where else would one interested more naturally look for information? And is not a repetition in three successive issues of the paper sufficient? How seldom is more than that required? Indeed, we do not understand that any challenge is made of the sufficiency of the publication. But when that is made and is sufficient, notice is given. The fact that the owner after being notified is required to appear and file his objections within ten days, is thus the sole ground of complaint. But how many days can the courts fix as a minimum? How much time can be adjudged necessary as matter of law for preparing and filing objections? How many and intricate and difficult are the questions involved? Regard must always be had to the probable necessities of ordinary cases. No hardship to a particular individual can invalidate a general rule. A reassessment implies not merely the fact of the improvement, but also that one attempt had been made to collect the cost and failed. Inquiry had been had in the courts, and the one assessment set aside. The facts were known. Ten days' time, therefore, does not seem unreasonably short for presenting objections to a reassessment.

And there is nothing in the case of this plaintiff in error to suggest any injustice. It, though a corporation of the State of California, was doing business in the State of Washington, and having its principal office in the city of Whatcom. In other words, it was domiciled in the city in which the improvement was made. The improvement made on the street, on which its lots abutted, consisted in grading, planking and sidewalking. It is, to say the least, highly improbable that it could have been ignorant of the fact that they were made. It must have known also that such improvements have to be paid for, and that the ordinary method of payment is by local

assessment on the property benefited — the abutting property being primarily the property benefited. A previous assessment had been made for the cost of these improvements. Litigation followed, which was carried to the Supreme Court of the State, and resulted adversely to the city. It is true this plaintiff in error was not a party of record in that litigation, and counsel criticise a statement in the opinion of the Supreme Court in this case, that "it appears that the appellant has been contesting the proceedings to collect the cost of these improvements for several years past, and that no hardship has resulted in consequence of the shortness of time prescribed;" yet it may be that the court was advised by counsel that it had contributed to the cost of that litigation, and at any rate it is difficult to believe that it was ignorant all these years of what was going on.

In view, therefore, of the character of the improvements, the residence of the plaintiff in error, the almost certainty that it must have known of the improvements and that it would be expected to pay for them, it is impossible to hold that a ten days' notice was so short as to be absolutely void. And especially is this true when the Supreme Court of the State in which the proceedings were had has ruled that it was sufficient. Before proceedings for the collection of taxes sanctioned by the Supreme Court of a State are stricken down in this court it must clearly appear that some one of the fundamental guarantees of right contained in the Federal Constitution has been invaded.

The judgment of the Supreme Court of the State of Washington is

*Affirmed.*