Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/13/2022 01:07 AM CDT

Continental Resources, appellee, v. Kevin L. Fair,
defendant and third-party plaintiff, appellant,
and Heather Hauschild, Scotts Bluff County
Treasurer, and Doug Peterson, Attorney
General for the State of Nebraska, in their
official capacities, and the County
of Scotts Bluff, third-party
defendants, appellees.

___ N.W.2d ___

Filed March 18, 2022.    No. S-21-074.

1. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component
   of a party's case because only a party who has standing may invoke the
   jurisdiction of a court.
2. **Jurisdiction: Appeal and Error.** The question of jurisdiction is a ques-
   tion of law, upon which an appellate court reaches a conclusion indepen-
   dent of the trial court.
3. **Constitutional Law: Statutes: Judgments: Appeal and Error.** The
   constitutionality of a statute presents a question of law upon which
   appellate courts have an obligation to reach an independent conclusion
   irrespective of the decision of the court below.

Appeal from the District Court for Scotts Bluff County: Leo
P. Dobrovolny, Judge. Affirmed.

Michael W. Meister, Jennifer Gaughan, and Mark T. Bestul,
of Legal Aid of Nebraska, for appellant.

Gregory C. Scaglione and Casandra M. Langstaff, of Koley
Jessen, P.C., L.L.O., for appellee Continental Resources.

Douglas J. Peterson, Attorney General, and James A. Campbell, Solicitor General, for appellee Attorney General.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ., and Thompson, District Judge.

Papik, J.

If an owner of real property in Nebraska fails to pay property taxes, a statute allows the county in which the property is located to sell a tax certificate for the property to a private party. If, after a period of time, the owner of the real property fails to pay the taxes owed and the tax certificate purchaser complies with certain requirements, the tax certificate purchaser can obtain a deed to the property, free of any encumbrances. This appeal presents a multipronged challenge to the constitutionality of the statutes that authorize this process. The appellant contends that the statutes, both facially and as applied to him, violate the state and federal Takings Clauses; the state and federal Due Process Clauses; the federal Excessive Fines Clause; article I, § 25, of the Nebraska Constitution; and article III, § 18, of the Nebraska Constitution. We hold that these claims of unconstitutionality lack merit and, thus, affirm.

## BACKGROUND
*Nebraska Tax Sale Statutory Process.*

Before reviewing the facts of this particular case, we believe it beneficial to provide an overview of Nebraska's tax certificate sale process. Because tax certificate sale proceedings are governed by the law in effect at the time the tax sale certificate is sold, see *HBI, L.L.C. v. Barnette*, 305 Neb. 457, 941 N.W.2d 158 (2020), we cite the statutes that were in effect in March 2015, when the tax certificate for the property at issue in this case was sold.

The tax sale process has been a part of Nebraska law since at least 1879. See 1879 Neb. Laws, §§ 1-184, pp. 276-349. In that year, the Legislature passed an act "[t]o provide a system of revenue" for the growing state. 1879 Neb. Laws,

p. 276. Located within the revenue act of 1879 was a method of recouping unpaid property taxes—a tax sale process which allowed investors to purchase tax certificates on tax-delinquent properties, then to request a tax deed from the county treasurer after a certain amount of time had passed if the property owner had not redeemed the property. See, §§ 109-111, pp. 320-21; § 119, pp. 324-25; § 126, p. 327.

The process operates in largely the same manner today as it did in 1879. See Neb. Rev. Stat. § 77-1801 et seq. (Reissue 2018). Each county has an automatic lien on property within its boundaries for the property taxes that are due to the government. Neb. Rev. Stat. § 77-1901 (Reissue 2018). The county has the authority to sell its lien to a private party via a tax certificate when the taxes on the property become delinquent. See § 77-1818.

To facilitate the sale of the lien, the county treasurer creates a list of all the properties in the county that have delinquent property taxes. See § 77-1802. The list must then be published in a local newspaper once a week for 3 consecutive weeks. See § 77-1804. The tax certificate is then offered for sale. See § 77-1807(2)(b), (e), and (f). A statute sets the cost of the certificate as "the amount of taxes, interest, and cost thereon." § 77-1808.

If a county sells a tax certificate on a property, the property owner is not without recourse. The statute provides the owner the right to redeem the property by paying the county treasurer the amount listed in the tax certificate plus all other taxes paid by the tax certificate purchaser, any interest, and other fees. See § 77-1824. Interest accrues at 14 percent per year. Neb. Rev. Stat. § 45-104.01 (Reissue 2021).

So, what happens if the property owner does not redeem the property? The tax certificate holder can eventually apply for a tax deed, but must first wait at least 3 years after purchasing the tax certificate. See § 77-1837(1). Before applying for the tax deed, the tax certificate holder must provide a period of notice to the property owner of its intention to do so. See

§ 77-1831. If a tax deed is issued to the tax certificate purchaser, title to the property passes free and clear of any encumbrances. See *SID No. 424 v. Tristar Mgmt.*, 288 Neb. 425, 850 N.W.2d 745 (2014).

With this statutory background established, we turn to the facts and procedural history of this case.

*Factual and Procedural History.*

Kevin L. Fair and Terry A. Fair, a married couple, owned real property in Scotts Bluff County, Nebraska. The Fairs lived in a house on the property and owned the property free of any encumbrances.

In 2014, the Fairs failed to pay the property taxes they owed. In compliance with §§ 77-1801 and 77-1804, in February 2015, the county treasurer published a list of tax-delinquent properties in an area newspaper. The list included the legal descriptions of many properties, one of which was the Fairs' home. The list was published three times: February 5, 12, and 19.

The county treasurer sold a tax certificate for the property's unpaid taxes to Continental on March 11, 2015, for $588.21. Continental then paid the subsequent property taxes as if it were the owner of the property. Once Continental began paying the property's taxes, the County did not send any further communications or tax bills to the Fairs. Nor did the Fairs attempt to make any payments to the county treasurer for the delinquent property taxes.

Three years later, on April 13, 2018, Continental served the Fairs a "Notice of Expiration of Right of Redemption." The notice informed the Fairs that they had 3 months from the date the notice was served to redeem the property and that redemption would cost $5,268—the total value of the unpaid taxes, fees, and interest. The notice also indicated that if the property was not redeemed, Continental would apply for a tax deed and the right of redemption would expire.

The Fairs did not make any payment to the county treasurer after receiving the notice from Continental. True to its word, in July 2018, Continental applied for a tax deed. The county

treasurer issued the tax deed to Continental. At the time the tax deed was issued, the county assessed the value of the property at $59,759.

Continental thereafter filed a quiet title action against the Fairs. The Fairs eventually filed an amended answer, counterclaim, and third-party complaint, which added Scotts Bluff County and the county treasurer in her official capacity as third-party defendants. Relevant to this appeal, the Fairs alleged that the tax certificate sale process violated their constitutional rights in a number of respects. Because the Fairs sought to have statutes declared unconstitutional, the Nebraska Attorney General exercised his right "to be heard" regarding the Fairs' constitutional claims. See Neb. Rev. Stat. § 25-21,159 (Reissue 2016).

In response to a motion filed by Continental, the district court granted summary judgment against the Fairs and quieted title to the property in Continental's favor. The district court found that the tax certificate sale statutes were not unconstitutional in the manner alleged.

Terry Fair died while the lawsuit was pending in the district court. Kevin Fair (hereinafter Fair) filed a timely appeal.

On the same day he filed his opening brief, Fair filed a notice pursuant to Neb. Ct. R. App. § 2-109(E) (rev. 2014) that his appeal challenged the constitutionality of Nebraska statutes. We moved the case to our docket. The Attorney General filed a brief on appeal defending the constitutionality of the challenged statutes.

ASSIGNMENTS OF ERROR

Fair assigns that the district court erred in granting Continental's summary judgment motion to quiet title because the tax sale process set forth in § 77-1801 et seq. violates (1) the Takings Clauses of the U.S. and Nebraska Constitutions; (2) the Due Process Clauses of the U.S. and Nebraska Constitutions; (3) the Excessive Fines Clause of the U.S. Constitution; (4) article I, § 25, of the Nebraska Constitution; and (5) article III, § 18, of the Nebraska Constitution.

## STANDARD OF REVIEW

Although this case comes to us as an appeal from an order granting summary judgment, the parties do not disagree about any of the relevant facts. The sole issues on appeal are Fair's standing to assert his various constitutional challenges and the merits of those constitutional challenges.

[1,2] Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court. *Adair Holdings v. Johnson*, 304 Neb. 720, 936 N.W.2d 517 (2020). The question of jurisdiction is a question of law, upon which an appellate court reaches a conclusion independent of the trial court. *Id.*

[3] The constitutionality of a statute also presents a question of law upon which appellate courts have an obligation to reach an independent conclusion irrespective of the decision of the court below. See *State v. Boche*, 294 Neb. 912, 885 N.W.2d 523 (2016).

## ANALYSIS

*Standing.*

Before we can address the merits of Fair's constitutional challenges, we are confronted with a challenge to his standing. Because standing is a jurisdictional issue, we address it first. See *Egan v. County of Lancaster*, 308 Neb. 48, 952 N.W.2d 664 (2020).

The Attorney General contends that because Fair failed to comply with § 77-1844, he lacks standing to assert certain constitutional challenges. Section 77-1844 provides that "[n]o person shall be permitted to question the title acquired by a treasurer's deed without first showing that . . . all taxes due upon the property had been paid by such person . . . ." We have held that this statute sets forth conditions that must be met in order to obtain standing to challenge a tax deed. See, e.g., *Wisner v. Vandelay Investments*, 300 Neb. 825, 916 N.W.2d 698 (2018). See, also, *Griffith v. Nebraska Dept. of Corr. Servs.*, 304 Neb. 287, 297, 934 N.W.2d 169, 177 (2019)

("just as the Legislature can provide for standing that is broader than common-law standards, so too can it provide for more specific or more restrictive standing requirements"). And while we have held that a party may comply with the requirement that all taxes due must be "paid" by merely showing that it has tendered the necessary payment to the treasurer, see *Wisner, supra*, that holding is of no consequence here because it is undisputed that Fair has neither paid nor tendered payment of the taxes due upon the property.

Fair contends that he has standing to assert his constitutional challenges despite his failure to pay or tender payment of the tax debt. He contends both that § 77-1844 does not apply in this instance and that even if it does, it is unconstitutional as applied to him. We, however, find that we may consider the merits of Fair's constitutional challenges to the tax sale certificate process without resolving his arguments regarding § 77-1844.

Section 77-1844 sets forth conditions that must be met in order to "question title." See *Ottaco Acceptance, Inc. v. Larkin*, 273 Neb. 765, 772, 733 N.W.2d 539, 547 (2007) (emphasis omitted). And while Fair did question Continental's title in this case by seeking an order declaring the deed it was issued void, he also sought alternative relief in the event that title was quieted with Continental. In his counterclaim and third-party complaint, Fair sought both damages and an order directing that either Continental or the county pay him the value of the equity he had in the property, less the tax debt.

We need not, for purposes of our standing analysis, determine whether Fair would actually be entitled to damages or an order directing Continental or the county to make a payment that would return some of the equity in his property to him. As we have previously explained, because standing focuses "on the party" and not "the claim itself," when considering standing, "the legal and factual validity of the claim presented must be assumed." *Heiden v. Norris*, 300 Neb. 171, 174, 912 N.W.2d 758, 761 (2018) (internal quotation marks omitted).

And assuming that Fair's constitutional claims have merit and that he would be entitled to the alternative relief he requested, he is the proper party to assert those claims and request such relief. Property Fair owned is at issue, and § 77-1844 imposes no conditions precedent to the alternative relief requested. Accordingly, we find that we may consider the merits of Fair's constitutional challenges even if he lacks standing to question Continental's title. We turn to the merits of those constitutional challenges now.

*Procedural Due Process.*

Fair first argues that the tax certificate sale violated his right to procedural due process guaranteed by the 14th Amendment to the U.S. Constitution and article I, § 3, of the Nebraska Constitution. The 14th Amendment to the U.S. Constitution prohibits the states from "depriv[ing] any person of life, liberty, or property, without due process of law." The Nebraska Constitution states, "No person shall be deprived of life, liberty, or property, without due process of law . . . ." Neb. Const. art. I, § 3. "We have interpreted the Nebraska Constitution's due process and equal protection clauses to afford protections coextensive to those of the federal Constitution." *Keller v. City of Fremont*, 280 Neb. 788, 791, 790 N.W.2d 711, 713 (2010).

The parties to this case do not appear to dispute that before a deed to the property could be conveyed to Continental pursuant to the tax certificate statutes, procedural due process principles required that an attempt be made to provide Fair with advance notice. See *Jones v. Flowers*, 547 U.S. 220, 223, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006) ("[b]efore a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner notice and opportunity for hearing appropriate to the nature of the case") (internal quotation marks omitted). See, also, *HBI, L.L.C. v. Barnette*, 305 Neb. 457, 941 N.W.2d 158 (2020). There is also no dispute in this case that Fair received actual notice in April 2018 that

Continental had purchased a tax certificate for the property; that Fair had 3 months to redeem the property by paying the delinquent taxes along with interest and fees; and that if Fair failed to redeem the property, Continental intended to apply for a tax deed. The parties disagree, however, about whether this notice was constitutionally sufficient.

In many instances in which a party challenges the adequacy of notice on due process grounds, the issue is whether adequate steps were taken to attempt to provide notice that ultimately *failed* to reach its intended recipient. See *Oneida Indian Nation of New York v. Madison County*, 665 F.3d 408, 432 (2d Cir. 2011) (referring to "the much more common due-process challenge in which a plaintiff contests the sufficiency of a notice that failed to reach its intended recipient"). That was the issue this court addressed in *HBI, L.L.C.*, where it was held that certified mail that did not reach a property owner was nonetheless constitutionally adequate because it was "reasonably calculated" to provide actual notice. 305 Neb. at 470, 941 N.W.2d at 169 (internal quotation marks omitted). Fair's challenge is different. He concedes that in April 2018, he received actual notice his right to redeem his property would expire in 3 months, but he argues that due process required that he receive *earlier* notice. Specifically, Fair contends that due process required that he receive actual notice of the sale of the tax certificate to Continental in March 2015.

A party asserting that he or she was, as a matter of constitutional due process, entitled to earlier notice than that actually provided faces a difficult challenge. As a general matter, due process is a "flexible" concept, *Gilbert v. Homar*, 520 U.S. 924, 930, 117 S. Ct. 1807, 138 L. Ed. 2d 120 (1997) (internal quotation marks omitted), and thus resistant to an interpretation that "would impose a rigid requirement as to the precise timing with which notice must be given," *Oneida Indian Nation of New York*, 665 F.3d at 434. Consistent with that understanding, the U.S. Supreme Court recognized long ago that only in a "clear case" will a notice be found inadequate

on due process grounds because it did not provide a party with enough time to assert its rights. See *Bellingham Bay &c. Co. v. New Whatcom*, 172 U.S. 314, 318, 19 S. Ct. 205, 43 L. Ed. 460 (1899) ("it is certain that only in a clear case will a notice authorized by the legislature be set aside as wholly ineffectual on account of the shortness of the time").

As we will explain, we do not believe Fair has shown that this is a "clear case" in which the notice was obviously provided too late. First, we disagree with Fair's contention that state and federal Constitutions required that he receive notice upon the sale of the tax certificate to Continental. Fair claims that a property owner is entitled to notice of the sale of a tax certificate concerning his or her property because it is then that "the property begins to be wrested from the control of the one who owns it." Brief for appellant at 26. Fair points to no authority, however, that requires that notice be provided as soon as the possibility emerges that property may be subject to forfeiture.

Fair also, in our view, overstates the significance that the sale of the tax certificate has on the property owner's interests. Prior to the sale of a tax certificate, the county already possesses a lien on the property for the unpaid taxes. See § 77-1901. A tax sale certificate purchaser obtains only the county's lien at the time the certificate is sold. Compare § 77-1818 and § 77-1901. See, also, *HBI, L.L.C. v. Barnette*, 305 Neb. 457, 461, 941 N.W.2d 158, 164 (2020) ("[t]he tax sale purchaser acquires a lien on the property, which is represented by a tax certificate"); *John v. Connell*, 61 Neb. 267, 271, 85 N.W. 82, 84 (1901), *modified on rehearing* 64 Neb. 233, 89 N.W. 806 (1902), *on rehearing*, 71 Neb. 10, 98 N.W. 457 (1904) (quoting *Grant v. Bartholomew*, 57 Neb. 673, 78 N.W. 314 (1899)) ("'if taxes were due and delinquent against the land, then the owner of a tax-sale certificate was declared to be the assignee and the owner of the liens which the public had against that land and for which the public had sold or attempted to sell it'").

A tax sale certificate purchaser has no immediate right to enter the property, use the property, or dispossess the owner of the property. Further, if the property is redeemed within the subsequent statutory period, the tax sale certificate purchaser never obtains the right to do those things. And if the tax certificate holder does not act on the right to request a deed within 3 years 9 months from the date of the tax certificate sale, he or she loses the opportunity to do so. See § 77-1837(1). Simply put, a property owner is not deprived of his or her property at the time the tax certificate is issued. Rather, the property owner is deprived of the property when the county treasurer issues the tax deed. Consequently, we see no basis to hold that Fair was constitutionally entitled to notice of the tax certificate sale at the time it occurred.

Neither do we see a basis to hold that Fair was constitutionally entitled to be notified more than 3 months before the redemption period expired. "[D]ue process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Jones v. Flowers*, 547 U.S. 220, 226, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006) (quoting *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). In this case, Fair received a notice by certified mail informing him of Continental's intent to apply for a tax deed to the property in 3 months if Fair did not redeem the property. Fair was apprised "of the pendency of" Continental's intentions. He was also afforded an "opportunity to" redeem the property. We see no basis to say that this is a "clear case" in which the 3 months Fair was provided to assert his rights was plainly inadequate. See *Bellingham Bay &c. Co. v. New Whatcom*, 172 U.S. 314, 318, 19 S. Ct. 205, 43 L. Ed 460 (1899). We therefore find no procedural due process violation.

*Takings Clause.*

Fair also contends that the issuance of a tax deed to Continental pursuant to the tax sale certificate statutes violated

the Takings Clauses of the U.S. and Nebraska Constitutions. The Fifth Amendment to the U.S. Constitution states, "[N]or shall private property be taken for public use, without just compensation." The Nebraska Constitution states, "The property of no person shall be taken or damaged for public use without just compensation therefor." Neb. Const. art. I, § 21. We have held that because Nebraska's constitutional right to just compensation includes just compensation where property has been "taken or damaged," it is broader than the corresponding federal right. See *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013). But aside from giving effect to that difference in language, we have treated the federal and state rights as "coterminous." *Id.* at 490, 827 N.W.2d at 493. Because Fair does not allege any damage to his property, we will apply the same analysis to both his federal and state takings claims.

Fair makes two arguments regarding the Takings Clauses. He first contends that the issuance of a tax deed to Continental violates the Takings Clauses, because it effects a taking of his property for a private, rather than public, purpose. Alternatively, he argues that, at a minimum, the issuance of the tax deed brought about a taking of the equity in his property in excess of the tax debt and that he is entitled to compensation for that surplus equity.

Fair's first argument depends upon his contention that the State's power to impose and collect taxes is subject to the Takings Clauses. In support of this argument, Fair relies on a case from the U.S. Supreme Court, *Cole v. La Grange*, 113 U.S. 1, 5 S. Ct. 416, 28 L. Ed. 896 (1885), and a case from this court, *Bradshaw v. City of Omaha*, 1 Neb. 16 (1871). Fair argues that these cases establish that a government's power to tax is subject to the Takings Clauses. And, Fair continues, if the power to tax is subject to the Takings Clauses, the county's sale of a tax certificate and subsequent issuance of a deed to Continental, even if pursuant to an effort to collect a tax debt, is subject to a takings analysis.

Fair's argument, however, encounters a number of problems. First, the two 19th century cases upon which he relies involved challenges to the *use* of tax revenues. In *Cole*, the U.S. Supreme Court relied on the principles of the federal Takings Clause to conclude that a municipality could not raise revenue through taxation solely to aid a private iron and steel corporation. The focus on the government's use of tax revenue in *Cole* is reflected in its statement that "the taking of property by taxation requires no other compensation than the taxpayer receives in being protected by the government to the support of which he contributes." 113 U.S. at 8. Similarly, in *Bradshaw*, this court invoked Takings Clause language in the course of holding that a city could not impose taxes on lands that were previously outside the boundaries of the city and beyond "the settled part of the town," reasoning that the owners of that property would not benefit from the city's use of those taxes. 1 Neb. at 27. Fair, however, does not contend that the county is using taxes he paid for some improper purpose. He is instead challenging the government's method of tax collection. Thus, even assuming these cases remain good law, we do not read them to shed much light on this one.

Further, more recent cases cast considerable doubt on the notion that a government's sale of its lien on tax-delinquent property, or sale of the property itself, is subject to a takings analysis. Within the last decade, the U.S. Supreme Court has said, "It is beyond dispute that [t]axes and user fees . . . are not takings." *Koontz v. St. Johns River Water Managegment Dist.*, 570 U.S. 595, 615, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013) (internal quotation marks omitted).

If taxes, as the U.S. Supreme Court has held, are not takings, we do not see how efforts to collect that tax, whether through the sale of a lien on the property or sale of the property itself, could be characterized as a taking. See, also, *Jones v. Flowers*, 547 U.S. 220, 234, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006) ("[p]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their

property"); *Leigh v. Green*, 64 Neb. 533, 544, 90 N.W. 255, 259 (1902) ("[t]he power of the state to levy taxes obviously carries with it the power to collect them, and to provide all means necessary or appropriate to insure and enforce their collection"). We are far from alone in reaching that conclusion. See, e.g., *Speed v. Mills*, 919 F. Supp. 2d 122, 129 (D.D.C. 2013) (holding that tax sale could not be considered a Fifth Amendment taking because it "took place pursuant to [the government's] taxing power, not its power of eminent domain, its regulatory power, or any other power enabling it to take or encumber private property for a public purpose"); *Industrial Bank of Washington v. Sheve*, 307 F. Supp. 98, 99 (D.D.C. 1969) ("[a] tax sale is not a government taking for which just compensation must be paid under the Constitution"); *In re Murphy*, 331 B.R. 107, 128 (S.D.N.Y. 2005) ("[a] tax sale is not a taking for a public purpose because such sale is pursuant to the state's taxing power and not its power of eminent domain"); *In re Golden*, 190 B.R. 52, 57 (W.D. Pa. 1995) ("[i]n a tax sale context, the takings clause is not dispositive nor the appropriate basis for starting an inquiry"); *Fitzgerald v. Neves, Inc.*, 15 Wash. App. 421, 550 P.2d 52 (1976) (holding sale of land at tax foreclosure sale was not a taking).

Our conclusion that the county's tax collection efforts were not subject to the Takings Clauses undercuts any argument by Fair that the county could not use the tax sale certificate process to collect Fair's undisputed tax debt. Fair's alternative argument, however, is that even if the county could take steps to transfer his property to satisfy his tax debt, he is entitled to receive as "just compensation" the difference between the assessed value of his property and the tax debt, interest, and fees he owes, an amount he refers to as the "surplus equity" in his property. Brief for appellant at 34, 35. We turn to that argument now.

Continental and the Attorney General contend that we need not engage in any heavy lifting to address Fair's alternative argument. They claim that binding U.S. Supreme Court

precedent stands in the way of Fair's claim that he is entitled to compensation for surplus equity. In support of their argument, both Continental and the Attorney General direct us to *Nelson v. New York City*, 352 U.S. 103, 77 S. Ct. 195, 1 L. Ed. 2d 171 (1956). In *Nelson*, a property owner failed to pay certain water bills to a municipality. After the municipality notified the property owner and the property owner failed to redeem the property by paying the amounts owed, the municipality exercised its right to sell the property. The property was sold for an amount that significantly exceeded the property owner's debt. The property owner then challenged the municipality's retention of the entire proceeds of the sale as a taking without just compensation. The U.S. Supreme Court rejected the argument. It distinguished prior cases in which statutes guaranteed the property owner the right to any proceeds in excess of the debt, and it also observed that the property owner in *Nelson* failed to make use of a mechanism that would have allowed him to recover any surplus value.

The Attorney General also claims Fair's argument is precluded by *Balthazar v. Mari Ltd.*, 396 U.S. 114, 90 S. Ct. 397, 24 L. Ed. 2d 307 (1969). In *Balthazar*, a three-judge district court panel rejected a constitutional challenge to an Illinois tax sale process much like the Nebraska statutory system at issue in this case. See *Balthazar v. Mari Ltd.*, 301 F. Supp. 103 (N.D. Ill. 1969). The district court found no constitutional deficiency despite the fact that the Illinois process did not guarantee that the property owner would receive compensation in the event the value of the property exceeded the tax debt. The U.S. Supreme Court summarily affirmed the district court's determination in one sentence without analysis.

Unlike Continental and the Attorney General, we have doubts about whether Fair's argument can be resolved with only a cursory citation to *Nelson* or *Balthazar*. The *Nelson* court appeared to rely, at least in part, on the fact that the property owner in that case failed to take advantage of a statutory mechanism that would have entitled him to the proceeds

of the sale in excess of the tax debt. In our case, however, all appear to agree that there is no similar mechanism that would have entitled Fair to the surplus equity in his property. As for *Balthazar*, we hesitate to place too much reliance on a summary affirmance. The U.S. Supreme Court has explained that its summary affirmances are a "rather slender reed" on which to base future decisions, because the precedential effect of such a decision extends only to "the precise issues presented and necessarily decided by those actions." *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.5, 103 S. Ct. 1564, 75 L. Ed. 2d 547 (1983) (internal quotation marks omitted).

Furthermore, the U.S. Supreme Court has made clear that "[b]ecause the [Takings Clause] protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164, 118 S. Ct. 1925, 141 L. Ed. 2d 174 (1998) (internal quotation marks omitted). So while the U.S. Supreme Court may have concluded there was no constitutional problem in *Nelson* and *Balthazar* when the respective property owners did not receive the surplus equity from their property, that conclusion would seem to partially hinge on whether the property owner had a right under state law to the value of the property in excess of the tax debt. And because Fair claims Nebraska law recognizes such a property right, we will proceed to consider whether that is the case.

Fair cannot contend that the tax certificate sale statutes he challenges create a right to receive compensation equal to the value of the property in excess of the tax debt. They make no mention of such a right. Instead, Fair relies on several other Nebraska statutes and a provision in the state constitution that he claims recognize a property interest in the equity of his property. In support of this argument, Fair cites the definition of property in Nebraska's Uniform Property Act, Neb. Rev. Stat. § 76-101 (Reissue 2018); the definition of property

for purposes of statutes governing revenue and taxation, Neb. Rev. Stat. § 77-102 (Reissue 2018); Nebraska law providing a homestead exemption, Neb. Rev. Stat. § 40-101 (Reissue 2016); and article I, § 25, of the Nebraska Constitution, which prohibits "discrimination between citizens . . . in respect to" property rights. These general provisions, however, do not recognize a property interest in the surplus equity value of property after a tax certificate has been sold, the redemption period has expired, and a tax deed is requested and issued.

Fair also asks us to recognize a common-law property right in the value of property in excess of the tax debt when a tax deed is issued. Here, Fair asks us to follow the lead of the Michigan Supreme Court in *Rafaeli, LLC v. Oakland County*, 505 Mich. 429, 952 N.W.2d 434 (2020) (*Rafaeli*). In *Rafaeli*, the Michigan Supreme Court held that if a tax foreclosure sale yields proceeds in excess of the tax debt, the original property owner has a property interest in the surplus proceeds under Michigan common law. The Michigan Supreme Court reached this conclusion in reliance on the writings of Sir William Blackstone and former Michigan Supreme Court Justice Thomas M. Cooley, as well as English common-law cases. But the Michigan Supreme Court also found that some of its opinions in the early days of Michigan's statehood held that when land was sold for delinquent taxes and the proceeds exceeded the tax debt, the original property owner had a right to the surplus proceeds under the common law. *Id.* at 465-66, 952 N.W.2d at 456 ("in the early years of this state, it was commonly understood that the delinquent taxpayer, not the foreclosing entity, continued to own the land at the time of the tax-foreclosure sale and would have been entitled to any surplus").

Fair asks us to follow *Rafaeli* and find that if a tax deed is issued pursuant to the tax sale certificate statutes and the value of the property for which the tax deed is issued exceeds the tax debt, the original owner has a common-law right to a payment equal to the difference between the value and the tax debt.

We note initially that the Michigan Supreme Court recognized a former property owner's right to surplus proceeds generated in a tax foreclosure sale while Continental obtained a deed to Fair's property by another method (contrasting tax deed procedure under chapter 77, article 18, with the foreclosure process under chapter 77, article 19). See, e.g., *Neun v. Ewing*, 290 Neb. 963, 863 N.W.2d 187 (2015). Further, even if that difference could be set aside, unlike the challenger in *Rafaeli*, Fair cannot point us to any Nebraska cases recognizing such a common-law property right. In fact, this case appears to stand in stark contrast to *Rafaeli* in that regard. While *Rafaeli* relied on early Michigan cases recognizing a property owner's right to surplus proceeds from a tax foreclosure sale, the tax certificate sale process has been a part of Nebraska law since shortly after Nebraska became a state, see 1879 Neb. Laws, § 109, p. 320, yet Fair has not pointed us to any authority in our case law recognizing that the original property owner was ever entitled to receive compensation if the value of the property transferred to a tax certificate holder exceeded the tax debt. We thus find no basis to conclude that Nebraska common law recognizes the property interest that is essential for Fair's takings claim to succeed. See *Tyler v. Hennepin County*, 505 F. Supp. 3d 879 (D. Minn. 2020) (finding that Minnesota common law did not provide former owner of property forfeited to state and sold for delinquent taxes with right to surplus proceeds), *affirmed* No. 20-3730, 2022 WL 468801 (8th Cir. Feb. 16, 2022).

We have held that the Takings Clause "applies only to vested property rights" and that "[t]o be considered a vested right, the right must be fixed, settled, absolute, and not contingent upon anything." *Big John's Billiards v. State*, 288 Neb. 938, 954, 852 N.W.2d 727, 741 (2014) (internal quotation marks omitted). Fair, however, has not demonstrated that at the time the tax deed was issued, he had an absolute right to the difference between the assessed value of his property and his tax debt. Without such a right, his claims under the Takings Clauses cannot succeed.

*Excessive Fines.*

Fair's third argument is under the Excessive Fines Clause of the Eighth Amendment to the U.S. Constitution. He argues that transferring title of his property to Continental is an excessive fine prohibited by the Constitution because the value of the property was more than 10 times the amount of money he owed in delinquent taxes, interest, and fees.

The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The right to be free from excessive fines has been incorporated against the states through the Due Process Clause of the 14th Amendment. See *Timbs v. Indiana*, ___ U.S. ___, 139 S. Ct. 682, 203 L. Ed. 2d 11 (2019).

The U.S. Supreme Court has said, "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'" *Austin v. United States*, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993) (emphasis in original) (quoting *Browning-Ferris Industries v. Kelco Disposal*, 492 U.S. 257, 265, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989)). As we will explain, we find that the transfer of Fair's title to Continental lacks essential attributes of a "fine," as that term has been defined by the U.S. Supreme Court.

The U.S. Supreme Court has drawn a distinction between a penalty or forfeiture that is purely "remedial" and one that "can only be explained as serving in part to punish." *Id.*, 509 U.S. at 610. The latter, according to the U.S. Supreme Court, is a fine under the Eighth Amendment. A forfeiture is remedial, the U.S. Supreme Court has explained, if it, for example, removes dangerous or illegal items from society or compensates the government for a loss. *Browning-Ferris Industries, supra*.

Fair argues that the transfer of his property can only be understood as a form of punishment. In support of this contention, he points to the fact that as a result of the transfer, he stands to lose a property he previously owned free and clear of any encumbrances, the assessed value of which is more than

10 times the amount of the tax debt. Fair argues that the magnitude of his loss far exceeds remediation of his tax debt and that the transfer must be understood as punishment. We disagree for a number of reasons.

First, in *United States v. Bajakajian*, 524 U.S. 321, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998), the U.S. Supreme Court recognized that a penalty or forfeiture is not necessarily punitive merely because of a discrepancy between the value of the property forfeited and the government's loss. See, also, *Tyler v. Hennepin County*, 505 F. Supp. 3d 879, 896 (2020) (relying on *Bajakajian* and concluding that "[t]he fact that the operation of Minnesota's tax-forfeiture system may result in a windfall to the government therefore does not compel the conclusion that the system is punitive"), *affirmed* No. 20-3730, 2022 WL 468801 (8th Cir. Feb. 16, 2022). Second, the forfeitures the U.S. Supreme Court has found punitive in *Austin, supra*, and *Bajakajian, supra*, involved the forfeiture of property involved in criminal offenses and the U.S. Supreme Court relied heavily on their connection to criminal proceedings. Here, there is no suggestion that a property or its owner must be involved in criminal behavior in order for the property to be transferred via the tax certificate sale process.

In addition to those reasons, the notion that the State or the county intended to punish Fair for not paying his property taxes simply does not hold together. As we have noted, the statutes Fair challenges allowed him to avoid the loss of his property if he paid his tax debt more than 3 years after the tax certificate was first sold. This extended opportunity to avoid forfeiture suggests that the purpose of the tax certificate sale system is to "collect taxes, rather than to punish delinquent taxpayers." *Tyler*, 505 F. Supp. 3d at 896.

Further, the magnitude of Fair's loss was not dictated solely by the statute. If no party purchases a tax certificate offered for a particular property, a Nebraska statute provides that the county board shall direct the county attorney to foreclose the lien for the taxes in a tax foreclosure proceeding. See

§ 77-1901. Similarly, the purchaser of a tax certificate may choose to initiate a tax foreclosure proceeding rather than requesting a tax deed. See, Neb. Rev. Stat. § 77-1902 (Reissue 2018); *Neun v. Ewing*, 290 Neb. 963, 863 N.W.2d 187 (2015). When property is sold in a tax foreclosure proceeding, however, the original owner is statutorily entitled to receive surplus proceeds. See, Neb. Rev. Stat. § 77-1916 (Reissue 2018); *County of Lancaster v. Trimble*, 34 Neb. 752, 52 N.W. 711 (1892). It is difficult to discern an intent to punish delinquent taxpayers on the part of the Legislature when the magnitude of the delinquent taxpayer's loss depends on choices made by third parties.

Not only did the magnitude of Fair's loss depend on a choice made by Continental, the tax sale certificate process resulted in the transfer of his property to Continental. This fact highlights another way in which the tax sale certificate process does not function as a fine under the Eighth Amendment. The U.S. Supreme Court has held that the Excessive Fines Clause applies only to "those fines directly imposed by, and payable to, the government." *Browning-Ferris Industries v. Kelco Disposal*, 492 U.S 257, 268, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989). Here, Fair was not ordered to pay anything to a governmental entity as a result of his failure to pay his delinquent tax debt.

Because we find that there was no fine imposed for purposes of the Eighth Amendment, Fair's Excessive Fines Clause argument lacks merit.

*Article I, § 25, of Nebraska Constitution.*

Next, Fair argues that the tax certificate sale process violates article I, § 25, of the Nebraska Constitution. That section states, "There shall be no discrimination between citizens of the United States in respect to the acquisition, ownership, possession, enjoyment or descent of property. The right of aliens in respect to the acquisition, enjoyment and descent of property may be regulated by law." Neb. Const. art. I, § 25. While

this provision regulates discrimination with regard to property rights, see, e.g., *Landon v. Pettijohn*, 231 Neb. 837, 438 N.W.2d 757 (1989), Fair makes no argument that the tax sale certificate statutes unlawfully discriminate. He instead merely repeats the Takings Clause arguments we have already rejected. We thus find no basis to determine that the challenged statutes violate article I, § 25.

*Article III, § 18, of Nebraska Constitution.*

Finally, Fair briefly contends that the tax sale certificate statutes create a "special class" in violation of article III, § 18, of the Nebraska Constitution. Brief for appellant at 45. There is no indication in our record, however, that Fair raised this argument in the district court. Accordingly, we will not address its merits. See *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

## CONCLUSION

In this appeal, Fair argues that Nebraska's tax certificate sale statutes are "harsh and unconstitutional." Brief for appellant at 45. The sole questions before us, however, are whether the statutes are unconstitutional in the manner Fair assigns. We find that they are not and, accordingly, affirm.

AFFIRMED.

MILLER-LERMAN, J., not participating.